John Paul SCHOOK, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17515.

United States Court of Appeals
Eighth Circuit.

Oct. 26, 1964.

564

Robert J. Robinson of Evans & Dixon, St. Louis, Mo., court-appointed lawyer, made argument for appellant and filed brief.

Robert J. Koster, Asst. U. S. Atty., St. Louis, Mo., made argument for appellee and filed printed brief, with Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendant was tried to a jury, found guilty, and sentenced to a term of two years in the custody of the Attorney General for violation of § 902(e) of the Federal Firearms Act, 15 U.S.C.A. §§ 901–909.[1]

The indictment charged defendant with unlawfully transporting a shotgun in interstate commerce while under charge by information in the Circuit Court of the County of St. Louis, Missouri of burglary in the second degree, a felony punishable by imprisonment for a term exceeding one year.

The issues on appeal are:

1. The admission in evidence, over defendant's timely motion to suppress, of the shotgun seized from the vehicle in which defendant was riding, without warrant for arrest or search.

2. The validity of the indictment which alleged defendant was under charge by "information" rather than "indictment".

For reasons hereafter set forth, we affirm the judgment of conviction.

The arrest was made without a warrant. Thus, the crucial question is whether the arresting officer had "probable cause". This Court recently held in Pigg v. United States, 337 F.2d 302 (8th Cir. 1964) that "This issue, factual in nature, must be resolved from the facts and circumstances of each particular case, Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302 [93 L.Ed. 1879] (1949); Washington v. United States, 105 U.S.App.D.C. 58, 263 F.2d 742, 744 (1959) citing cases; Hawkins v. United States, 8 Cir., 288 F.2d 537, 541 (1961), cert. denied, 366 U.S. 975, 81 S.Ct. 1943 [6 L.Ed.2d 1264] (1961); Mueller v. Powell, 8 Cir., 203 F.2d 797 (1953)."

The evidence viewed most favorably to the government's case for validity of the arrest, search and seizure discloses the following sequence of events. Officer Logan, a patrolman of seven years' experience with the Alton, Illinois police department was cruising in the downtown area of Alton about daybreak, approximately five o'clock a. m., on August 15, 1963. On duty and in uniform, he was driving a white patrol car with official markings which was equipped with a flashing red light, or "fireball", on the center of its roof. His attention was attracted by an occupied Plymouth automobile because it had stopped at an intersectional stop sign for an undue period of time. This caused him to check the automobile's license number. He thought he recognized the license number from the "hot sheet", a list furnished to the Alton police department by nearby authorities indicating vehicles used by known burglars who might be "working" in the area. Officer Logan immediately radioed headquarters and confirmed the fact that the Plymouth's license number was on the "hot sheet".

Officer Logan observed that the driver of the Plymouth appeared to be alone. After leaving the stop sign the Plymouth

---

1. § 902(e) provides: "It shall be unlawful for any person who is under indictment or who has been convicted of a crime punishable by imprisonment for a term exceeding one year or who is a fugitive from justice to ship, transport, or cause to be shipped or transported in interstate or foreign commerce any firearm or ammunition."

was driven at a speed that exceeded the limit by some five or ten miles per hour. Officer· Logan decided to question the driver of the Plymouth primarily because the automobile bore a license plate issued to a suspected burglar. From the rear of the pursued automobile, he blinked his headlights and flashed his white spotlight. Under such routine circumstances, it was the policy of Alton police to refrain from sounding their sirens during the early morning hours. When the automobile did not stop at his light signals, Officer Logan pulled alongside the driver of the automobile and sounded his horn. The driver turned his head to the opposite side, so his face could not be seen, whereupon Officer Logan fell behind and again signalled with his lights for the driver to stop. The driver again refused to heed the signals. Officer Logan then pulled alongside the automobile once more and veered his car towards it, but the driver failed to stop and swerved his vehicle towards the police car. By this time, the automobile had approached a bridge spanning the Mississippi River from Alton, Illinois to the State of Missouri. When Officer Logan radioed headquarters that he was going to pursue the automobile across the state line, two additional Alton police cars joined in the chase.

When the automobile reached the bridge, its speed was greatly accelerated, whereupon Officer Logan sounded his siren and turned on his flashing "fireball". While both vehicles were on the bridge, Officer Logan, for the first time, noticed a second occupant in the automobile, later ascertained to be defendant. The defendant appeared to be handling a shotgun, and Officer Logan radioed to the police cars following that one suspect was armed.

As the automobile arrived at the Missouri side, Officer Logan saw defendant open its door and throw away numerous, unidentified objects. Officer Logan then fired three shots in the air. The driver still did not heed his warning, so he fired one shot directly at the automobile. After the last shot, the driver finally stopped

the automobile about one-half mile from the bridge in the State of Missouri. A Missouri state police car, manned by two patrolling officers, had noticed the Alton police car crossing the bridge with its emergency signals in operation and proceeded immediately to the scene of the capture.

Both the driver and defendant were arrested by Officer Logan for "suspicion of burglary". Their automobile was immediately searched and the shotgun, admitted into evidence over objection below, was discovered dismantled lying behind the rear seat on the window ledge.

■ A police officer has no right to make an arrest without warrant based on bare suspicion of guilt. We so held in reversing the conviction in Pigg v. United States, supra. In the Pigg decision, we reviewed Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), as well as other leading authorities which have condemned the practice of attempting to justify probable cause by utilization of the fruits of the search or any other after acquired information.

■ Reasonable grounds for suspicion when accompanied by facts or circumstances strong enough to justify a reasonably cautious man to believe the guilt of the suspect, suffice to constitute probable cause necessary for arrest without warrant. The Supreme Court in Carroll v. United States, 267 U.S. 132, 161, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790 (1925) said, "The substance of all the definitions [of probable cause] is a reasonable ground for belief in guilt." See also Ker v. California, 374 U.S. 23, 34–35, 83 S.Ct. 1623 (1963); Henry v. United States, supra, 361 U.S. at 102, 80 S.Ct. at 171, citing cases; Draper v. United States, 358 U.S. 307, 313, 79 S. Ct. 329, 3 L.Ed.2d 327 (1959); and Mueller v. Powell, 203 F.2d 797, 800–801 (8th Cir. 1953).

■ Officer Logan had reasonable grounds for suspicion when he became aware that the vehicle in which defendant was a passenger bore a license plate

**566**

issued to a burglar who might be operating in the area. Officer Logan's suspicions ripened into probable cause by the events that immediately followed: The deliberate refusal to stop upon use of conventional signals by the investigating officer; the furtive conduct of the driver in turning his face to avoid recognition; the defendant's concealing himself in the fleeing automobile until crossing the bridge en route to desired jurisdictional sanctuary in the State of Missouri and then brandishing a shotgun; the flight across the bridge at excessive speed; the discard of objects from the automobile after crossing the bridge; continued refusal to stop even after the police officer sounded his siren, flashed his "fireball", and fired three warning shots in the air. All of this conduct combined more than justified the arresting officer in reasonably believing the occupants of the automobile were escaping from or in the process of committing a felony.

Security of the public demands an arrest under such positive circumstances of wrongdoing. Officer Logan would have been derelict in his duty had he failed to initially undertake to investigate the activity of defendant and his companion or to subsequently abandon the chase without effectuating an arrest. Any reasonable, prudent and cautious witness to these events would have been justified in concluding that the suspects were engaged in criminal activity at the time of their apprehension, thereby vesting the arresting officer with "probable cause".

■ The defendant strongly urges that the arrest was perfected when Officer Logan first attempted to stop the automobile in which he was riding. This conclusion is unsupported by the evidence. The facts indicate that Officer Logan originally intended only to question the driver of the automobile believed to be owned by a suspected burglar. Executing permissible police procedure to safeguard the community against criminal activity, the police officer was only attempting to routinely question persons under suspicious circumstances to ascertain their identity and actions. Ar-

rest connotes restraint and not temporary detention for routine questioning. If the driver had stopped when first signalled by Officer Logan and he had questioned the occupants as contemplated, the ensuing confrontation would have amounted only to a permissible accosting, but by no means an official arrest.

The Henry case, supra, is instantly distinguishable on its facts and does not support defendant's appeal for reversal based on the evidence. There, everything done by the occupants of the car was found to be "outwardly innocent" and "[t]heir movements in the car had no mark of fleeing men or men acting furtively." Henry v. United States, supra, 361 U.S. at 103, 80 S.Ct. 168. Defendant's actions and those of his companion in the instant case did not typify innocent men behaving lawfully.

■ Defendant also maintains that he had a constitutional right to resist by flight an illegal arrest. He asserts, that under some circumstances, a person may resort to taking of life in resisting an illegal arrest. John Bad Elk v. United States, 177 U.S. 529, 20 S.Ct. 729, 44 L. Ed. 874 (1900). However, such a right as recognized by the Supreme Court in that decision vanishes when probable cause for belief a felony has been committed gives rise to the arrest without a warrant. There is good reason under certain circumstances to permit an arrest without a warrant in order to prevent the escape of criminals. Judge Blackmun of this Court observed in Robinson v. United States, 327 F.2d 618, 623 (8th Cir. 1964), that society has a transcending interest in the administration of criminal laws:

> "Somewhere the rights of the public and the rightful demands of orderly criminal procedure deserve protection, too."

The strong evidence underpinning the legality of defendant's arrest justifies enforcement of this protective interest in the instant case.

■ The arrest being legal, it was proper to admit into evidence the shotgun

found in the escape automobile subsequent to and as an incident to the arrest. Ker v. United States, supra, 374 U.S. at 41, 83 S.Ct. 1623; Jones v. United States, 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958); Robinson v. United States, supra; and Kernick v. United States, 242 F.2d 818 (8th Cir. 1957).

Finally, the defendant attacks the validity of the indictment. He points out that the indictment alleges that the defendant unlawfully transported the shotgun in interstate commerce while under a Missouri state court charge by *"information"* of burglary in the second degree, which is punishable by imprisonment for a term exceeding one year. The statute on which the federal indictment is founded (15 U.S.C.A. § 902(e) supra footnote 1) makes such transportation of firearms unlawful by a person under prior *"indictment"* for a crime punishable by imprisonment for a term exceeding one year. The question, therefor, is whether the term "indictment" was used in the Federal Firearms Act in a generic sense to include an "information" charging commission of a felony, or whether its definition is to be ascribed a narrow technical meaning. Defendant asserts that the Act lacks clarity and as a criminal law, it should be strictly construed in his favor.

■ There is no essential difference in the function or consequence of an "indictment" and an "information". On the one hand, there is individual action by the prosecuting attorney in initiating a charge by information, while on the other, group action of the grand jury issues an indictment. But both are notices to the accused of charges in the name of the sovereign for alleged violation of its penal statutes.

■ The defendant was under charge of burglary by information. The State of Missouri, like many jurisdictions, does not ordinarily utilize the grand jury as the charging arm of government against alleged criminal offenders since it is a cumbersome body convenable only upon order of a judge of a court having power

to try and determine felonies. Mo.Const. Art. 1, § 16, V.A.M.S. By and large, a felony such as defendant was charged with would be prosecuted by information, not indictment, since the Missouri statutes authorize prosecution of felonies by either form of criminal pleading. 38 Vernon's Ann.Mo.Stat. § 545.010.

Consequently, we cannot conclude that the Act lacks clarity and should be construed to differentiate between persons charged with felony by "indictment" or "information". Congress plainly sought to protect the public by proscribing the transportation of firearms by convicted felons or those charged with felonies without attaching any significance to the procedural vehicle forming the basis of the charge. It would therefore emasculate Congress' purpose for us to distinguish between persons lawfully charged with a felony by "information" and those charged by "indictment". The Court of Appeals for the First Circuit has twice passed squarely on this issue contrary to defendant's contentions here. In Cases v. United States, 131 F.2d 916, 921 (1st Cir. 1942), cert. denied 319 U.S. 770, 63 S.Ct. 1431, 87 L.Ed. 1718 (1942), the court held:

> "In the Act Congress sought to protect the public by preventing the transportation and possession of firearms and ammunition by those who, by their past conduct, had demonstrated their unfitness to be entrusted with such dangerous instrumentalities, and certainly no one can seriously contend that the test of unfitness which Congress established is irrelevant to this purpose."

Later in Quinones v. United States, 161 F.2d 79, 80–81 (1st Cir. 1947), cert. denied 331 U.S. 833, 67 S.Ct. 1513, 91 L. Ed. 1846 (1947), the First Circuit reaffirmed its construction of § 902(e):

> "The word 'indictment' has two well recognized meanings. It is used in a broad general sense to indicate a charge of an offense by some undefined legal proceeding, and it is used in a narrow technical sense to indi-

568

cate a written accusation of an offense presented in due form of law by a grand jury. Webster's New International Dictionary, Second Edition 1941; Bouvier's Law Dictionary, Rawle's Third Revision; Grin v. Shine, 187 U.S. 181, 192, 23 S.Ct. 98, 47 L.Ed. 130. The question is which of these meanings Congress intended the word to have in the Federal Firearms Act. We think Congress must have intended to use the word therein in its general rather than in its. technical sense.

"It is obvious as already pointed out that Congress did not intend the Act to apply indiscriminately to everyone. It saw fit to impose its prohibitions upon the receipt and transportation of firearms and ammunition only on persons who might logically be presumed because of their past conduct to have a predilection for the use of arms and ammunition in the pursuit of a criminal career. And it saw fit to classify in this group, in addition to fugitives from justice, not only those who had actually been convicted of a crime of violence but also those, at least a certain class of those, who had legally been charged with having committed such a crime. With the object in mind of grouping the legally suspect and the proven guilty together in a class of potentially dangerous persons it seems hardly likely that Congress intended to differentiate between those legally suspect because under indictment by a grand jury and those legally suspect because an information had been filed against them by a prosecuting attorney. *Instead it seems much more reasonable to assume that Congress intended to make inclusion in the interdicted class depend upon whether a charge of a crime of violence had formally been made rather than upon the precise method or technique by which such a charge when made comes before a court for trial.*" (Emphasis supplied)

We are inclined to follow the logic and sound reasoning of the First Circuit in concluding that the instant indictment. validly charges an offense within the meaning of § 902(e).

We wish to express our appreciation to Mr. Robert J. Robinson, court-appointed attorney for the defendant, for the able fashion in which he thoroughly and skillfully represented this defendant on appeal.

The judgment of conviction is affirmed.