215 So.2d 604

**Arthur B. HAYES**

v.

**STATE.**

**I Div. 255.**

Court of Appeals of Alabama.

Oct. 22, 1968.

MacDonald Gallion, Atty. Gen., and John A. Lockett, Jr., Asst. Atty. Gen., for the State.

Robt. G. Kendall, Mobile, for appellant.

PRICE, Presiding Judge.

This is an appeal from a conviction of possession of marijuana. Punishment was fixed at five years' imprisonment in the penitentiary. Defendant appeals.

The evidence for the state may be summarized as follows: Mobile Policemen Blunt and Allen were on a routine patrol in a police car at approximately 2:45 o'clock, A.M., on Sunday, February 13, 1966, when they observed defendant and one Fred Henderson standing inside a narrow alcove or vestibule leading to the

door of a grocery store. As the police car approached and flashed its headlights on the men, they walked away from the doorway. Officer Allen called to them to stop. One stopped immediately but the defendant kept walking. Upon being called a second time, defendant turned around, pulled a handkerchief and two small objects from his pocket, dropped them to the ground and came to the police car.

The defendant stayed at the car and Officer Allen retrieved two small brown folders or envelopes and a handkerchief from the ground. The defendant was then placed under arrest and frisked for weapons. No weapon nor other incriminating evidence was found on his person. Defendant denied dropping the items and told the officers they were not his.

Nelson Grubbs, a state toxicologist, determined that the envelopes or folders contained marijuana.

Fred Henderson, called as a witness by defendant, testified he and defendant were on their way from the Ebony Club to the Elks Club. Henderson, obeying a call of nature, relieved himself near the side of the grocery store while defendant waited at the front of the store. As Henderson returned the officers arrived. Henderson did not see defendant drop anything. He stated the officer searched defendant and then made a search of the area, finding the packages in the street.

The first insistence of appellant is that the trial court erroneously admitted evidence which was the fruit of an unlawful arrest.

In Schook v. United States, 337 F.2d 563 (8th Circuit 1964) the court held that a police officer who is only attempting to routinely question persons under suspicious circumstances to ascertain their identity and actions is executing permissible police procedure to safeguard the community against criminal activity and is not making an "arrest."

To like effect is the ruling of the court in People v. Rivera, 14 N.Y.2d 441, 252 N.Y.S.2d 458, 201 N.E.2d 32, cert. den. 379 U.S. 978, 85 S.Ct. 679, 13 L.Ed.2d 568. There the court said·

"The authority of the police to stop defendant and question him in the circumstances shown is perfectly clear. The business of the police is to prevent crime, if they can. Prompt inquiry into suspicious or unusual street action is an indispensible police power in the orderly government of large urban communities. It is a prime function of city police to be alert to things going wrong in the streets; if they were to be denied the right of such summary inquiry, a normal power and a necessary duty would be closed off.

"And the evidence needed to make the inquiry is not of the same degree or conclusiveness as that required for an arrest. The stopping of the individual to inquire is not an arrest and the ground upon which the police may make the inquiry may be less incriminating than the ground for an arrest for a crime known to have been committed."

See also Schook v. United States, supra.

■ We are of opinion that the circumstances shown, persons loitering around a closed establishment at that hour of the night, justified the officers in stopping the defendant and questioning him. We hold that from the evidence the arrest did not take place until defendant had thrown the objects onto the ground.

In Burton v. United States, 9 Cir., 272 F.2d 473, cert. denied, 362 U.S. 951, 80 S. Ct. 863, 4 L.Ed.2d 869, the defendant dropped an envelope containing heroin to the ground when police asked her to stop. She denied that the object recovered from the ground was hers. The court said that lack of "probable cause" or "reasonable grounds" for the arrest was not developed by appellant if it in fact existed. The opinion states:

"The government argues that lack of probable cause for arrest or search is unimportant and immaterial because appellant is in no position to claim an interest in the evidence abandoned by her, and we agree.

"Appellant asks us to follow Williams, supra, (Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789) and hold that despite a disclaimer of ownership in the heroin, and a denial that she had ever possessed it, she somehow obtained a standing to raise an objection, based on her interest therein, because other witnesses testified she dropped the heroin. We decline to follow the Williams case in this regard.

\*     \*     \*     \*     \*     \*

"The heroin was abandoned property (citing cases). There being in fact and law no search and in law no seizure of the evidence by which appellant was convicted, there could be no illegal search or seizure involved."

See also Vincent v. United States, 337 F.2d 891 (8th Circuit 1964.)

■ In the case at bar the marijuana was not obtained by an illegal search and seizure.

■ It is next insisted that the trial subjected defendant to being twice in jeopardy for the same offense.

The indictment charged, in pertinent part, that defendant "did unlawfully possess \* \* \* marijuana, Cannabis Americana or Cannabis Indica. \* \* \*."

The argument in brief is:

"Possession of Marijuana is made a criminal offense by two distinct portions of Title 22, Code 1940. The trial court proceeded under Chapter 9, which makes possession of 'any marijuana, cannabis americana, or cannabis indica' unlawful and makes the crime a felony. Chapter 8 defines 'Narcotic Drugs' as including cannabis, provides that it is unlawful to possess any narcotic drug, and makes violation of the provisions of the chapter a misdemeanor.

"Dr. Grubbs testified that cannabis and marijuana were synonymous.

"A preliminary hearing, as required by law, was held in the Recorder's Court of the City of Mobile, the offense being committed in the City. This court has jurisdiction over misdemeanors committed within the City. Therefore, appellant could have been sentenced by the Recorder's Court under Title 22, Sec. 255(a), Code 1940.

"Instead he was bound over to the grand jury. This being the case, appellant was placed in double jeopardy."

We agree with the Attorney General that Chapter Eight is aimed primarily at those persons; physicians, dentists, veterinarians, apothecaries, etc., who might legally be in possession of marijuana but for some reason may have been careless. Defendant was properly tried and sentenced under the provisions of Title 22, Section 256, Code 1940.

During the cross examination of defendant's witness, Fred Henderson, the following occurred:

"Q. Now, I am going to ask you this and I am going to ask you to tell the Jury the truth. Didn't you tell this officer right here, Officer Allen, that you had had a conversation with that boy about—in the Ebony Club about going outside, that he had something and you could get loaded on it?

"A. No, I didn't tell him.

"Q. You didn't tell that to the officer?

"A. No, I didn't. I told him the conversation was based on music, just like I'm telling you about it now.

\*     \*     \*     \*     \*     \*

"Q. You are going to jail and you are in the back of a police car and

they had picked up something that looked suspicious and opened it up and you don't care what it is do you?

"A. No, I mean I didn't have no charge against me for nothing. I hadn't did nothing, hadn't violated.

"Q. Wasn't that when you told the officer here that he was the one that said he had something you could get loaded on?

"A. No, I didn't tell the officer that, never did."

 Officer Allen was then recalled to the stand by the state and after he had testified that on the early morning after the arrest he had a conversation with the witness Fred Henderson in the police station; that defendant was present but was not within hearing distance; that he talked with Henderson concerning the arrest and what had "gone on out at Adames street," the district attorney propounded the following question:

"Tell the jury what Fred Henderson, the witness who testified a few minutes ago, told you under these circumstances?

The defendant objected to the question upon the ground that the proper predicate had not been laid for the introduction of such evidence. The court overruled the objection. The witness answered:

"He told me this guy told him to let's go outside and get loaded—he had some stuff to go outside and get loaded with and said he went on out with him."

Henderson was referring to defendant when he said "this guy."

We are of opinion the objection was well taken. The question put to the witness Allen was at variance with the predicate laid for the impeachment of the witness Henderson. Bridges v. State, 225 Ala. 81, 142 So. 56; Couch v. Hutcherson, 243

Ala. 47, 8 So.2d 580, 141 A.L.R. 697; Murph v. State, 153 Ala. 67, 45 So. 208.

For the error pointed out, the judgment is reversed and the cause remanded

Reversed and remanded.