282 So.2d 373

**Isom FENNELL, Jr.**

v.

**STATE.**

**8 Div. 340.**

Court of Criminal Appeals of Alabama.

May 29, 1973.

Rehearing Denied June 26, 1973.

Harris & Esdale, Birmingham, for appellant.

William J. Baxley, Atty. Gen., and Thomas Sorrells, Asst. Atty. Gen., for the State.

DeCARLO, Judge.

Isom Fennell, Jr. was convicted under an indictment charging possession of drugs and was sentenced by the Circuit Court of Morgan County to four years in the penitentiary. It is from this judgment that he appeals. This case was argued and submitted on May 10, 1973.

Evidence on behalf of the State tended to show that on April 26, 1969, Deputy Merrill Sims and Sgt. E. L. Anders, both of the Morgan County Sheriff's Department, were working the 6:00 P.M. to 4:00 A.M. shift. Deputy Sims testified that prior to going on duty, he was instructed by Sheriff Sandlin to watch for an Oldsmobile with a Kentucky tag, as he had information that a load of whiskey was coming in on the Northwest side of Decatur. At the trial, Sgt. Anders stated they were to be looking for either a Chrysler or Chevrolet having a Kentucky or Madison County tag. Defense counsel asked Sgt. Anders if he didn't testify at the preliminary that the Sheriff told him to be on lookout for a Tennessee tag, and Anders replied, "I don't recall testifying to that."

Around 2:00 or 3:00 A.M., while they had a pick-up stopped checking the operator's license, a 1968 Mercury automobile eased past the deputies bearing a Kentucky tag. The two officers followed and stopped the automobile. As they approached, appellant got out and showed them his license. Standing beside the car with the door open, both officers saw eight or ten empty beer cans and bottles on the floorboard and one full can on the front seat. Also visible were two or three 4" X 10" boxes between the front and back seat, with the words "Robitussin AC" written on them. Sheriff Anders removed a bottle from one carton and read that it contained codeine.

On direct examination, he testified as follows concerning the subsequent search and arrest:

"Q. Did you speak to the defendant about looking in his trunk because it was loaded down?

"A. Yes, sir, I asked him what was he loaded with, and he said, 'Clothes.' And I asked him about opening the trunk and let me see them, and he did, he opened it.

"Q. You said, 'What are you loaded with?' He said, 'Clothes.' And you said, 'Well, can I see them?' And then did he voluntarily open the trunk and let you in?

"A. Yes, sir.

"Q. Did he open the trunk, or did you?

"A. He opened it.

"Q. Tell the jury what you found.

"A. There was thirty cases of this Robitussin cough syrup in the trunk."

* * * * * *

"Q. Well, when exactly did you arrest the defendant, Sergeant? Did you arrest him before you looked in the trunk, or after you looked in the

trunk, or do you recall exactly when in time you arrested him, or did you say your time was—did you say 'You are under arrest' at any time?

"A. I arrested him for illegal possession of prohibited liquor after we searched the car.

"Q. After you searched the car, you went back and said 'You are under arrest.' Did you say you are the—did you say 'You are under arrest?'

"A. 'Under arrest for illegal possession of prohibited liquor.'"

At the jail, appellant stated he was supposed to have made contact with someone at a Shell Service Station. Officer Sims then drove the Mercury to the appointed location, but after waiting for over an hour, he did not observe anyone try to make contact with the car.

On the same day, Clarence Harris, Investigator for the Morgan County Sheriff's Department, and Sgt. Bryant, State Investigator, interviewed appellant after advising him of his rights. Appellant stated he understood these rights and did not want a lawyer. Outside the jury's presence, testimony was heard concerning appellant's statement, and the court determined it to be voluntary. Harris testified that the following remarks were made by appellant:

"Well, I asked him how he got this stuff, and what he was going to do with it. He said that a guy in Louisville offered him two hundred dollars to make the trip to Decatur, and he was to leave his car parked on Vine Street, which he said he did. He said that he went to a juke joint for a while, and when he came back his car had this cough syrup in it, and from there the instructions was to go to the Shell Service Station on the corner of Church Street and Highway 31, and there someone else would contact

him and advise him what further he must do and what he was to do with this stuff."

The State Toxicologist testified that Investigator Harris delivered to him four bottles labeled with commercial label, Robitussin A. C., and that the liquid therein contained codeine.

Evidence was introduced concerning the Robitussin AC cough syrup found in the car, and a motion to suppress was filed. The motion was considered by the court during the course of the trial and overruled.

Counsel for the appellant argued many propositions, both orally and in brief, but the question of probable cause emerged as the fundamental inquiry. Did the deputies have probable cause to stop and search the car Isom Fennell, Jr. was driving? If not, then the lower court was in error in overruling the appellant's motion to suppress. If the deputies acted on reasonable belief and with probable cause, then the judgment is due to be affirmed.

The Supreme Court recognized in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L. Ed.2d 889 that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."

The subject of probable cause received further consideration in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612, wherein the court stated:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape.

 &ast; &ast; &ast; &ast; &ast; &ast;

"A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time."

 Applying these principles to the present case, we believe the deputies' actions were reasonable and in response to what they had been told and what they personally observed. The information came from the Sheriff of Morgan County and certainly warranted more credence than like information from an unknown informer or a telephone tip.

In reaching this conclusion, we reject counsel's argument that the reasonable cause for stopping could only be predicated on personal knowledge rather than information supplied by another.

Counsel for appellant insists that at the time the officers stopped Fennell's car, an arrest was effected. His authority for this contention is Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134, which involved a theft from an interstate shipment of whiskey at a Chicago terminal. In that case, the Government had received information of an undisclosed nature from the employer of one, Pierotti. On the day following the interstate theft, agents were investigating in the neighborhood of the theft and saw Henry and Pierotti leave a tavern and drive away. The agents followed them into an alley in a residential area where Henry left the car and entered a gangway. He returned carrying several large cartons which were placed in the car. The agents were unable to follow, but later saw the car parked near the same tavern. Within a short time, Henry and Pierotti left the tavern and returned to the same area and again loaded cartons into their car. From their position, the agents were unable to determine the contents of the cartons, but when the men drove off, the agents waved them to a stop.

*Henry,* supra, may be interpreted by some courts and writers as establishing the proposition that any restraint of a suspect's freedom of movement constitutes an arrest.

We do not believe, however, that this decision announces such a precedent. In the Henry trial, the point at which the arrest occurred was not a contested issue. In fact, the Government expressly conceded that the arrest took place when the car was stopped. The apparent reason for this concession was to permit testimony of the agent's belief that a crime was being committed at that very moment.

In its opinion, the court made these comments on the arrest issue:

"That is our view on the *facts of this particular case*. When the officers interrupted the two men and restricted their liberty of movement, the arrest, *for purposes of this case,* was complete." (Emphasis added) *Henry,* supra.

We believe, the foregoing remarks are limited to the factual situation in *Henry,* supra, and do not preclude further consideration of this proposition.

If the appellant's interpretation of *Henry,* supra is the rule and not peculiar to those facts, then the police would be prevented from stopping and questioning persons suspected of crime unless they have a right to arrest at that instant.

We agree with Judge Tenny's appropriate observation in United States v. Thomas, D.C., 250 F.Supp. 771:

"If *Henry* can be read as holding that every stopping and consequent restriction of freedom of movement is an arrest, then I must candidly note that the rule of *Henry* is more 'honour'd in the breach than the observance.' (Hamlet, Act. 4, Scene 1.)"

In 1964, some five years after the *Henry* decision, the Eighth Circuit Court of Appeals held in Schook v. United States, 337 F.2d 563, "that a police officer who is only attempting to routinely question persons under suspicious circumstances to ascertain their identity and actions is executing permissible police procedure to safeguard the community against criminal activity and is not making an 'arrest.'" Hayes v. State, 44 Ala.App. 539, 215 So.2d 604.

The ruling in People v. Rivera, 14 N.Y. 2d 441, 252 N.Y.S.2d 458, 201 N.E.2d 32, has the same import. There the court said:

"The authority of the police to stop defendant and question him in the circumstances shown is perfectly clear. The business of the police is to prevent crime if they can. Prompt inquiry into suspicious or unusual street action is an indispensable police power in the orderly government of large urban communities. It is a prime function of city police to be alert to things going wrong in the streets; if they were to be denied the right of such summary inquiry, a normal power and a necessary duty would be closed off.

"And the evidence needed to make the inquiry is not of the same degree or conclusiveness as that required for an arrest. The stopping of the individual to inquire is not an arrest and the ground upon which the police may make the inquiry may be less incriminating than the ground for an arrest for a crime known to have been committed."

It should be noted that there exists a distinction between what is required to prove guilt and what is required to show probable cause. There is a difference between the two things to be proved, as well as between the tribunals which determine them, and difference in the quanta and modes of proof required to establish them. To illustrate, guilt in criminal cases must be proved beyond a reasonable doubt and by evidence consistent with the strict evidentiary rules of our court system. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879,

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not techni-

cal; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." *Brinegar,* supra.

■ In order for a detention to be valid, the officer must reasonably, and in good faith, suspect the individual detained of being involved in some form of criminality.

■ Reasonable ground for belief of guilt or probable cause means more than a good faith suspicion. Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. The measure of legality of a seizure of an automobile without a warrant is whether that seizing officer has reasonable or probable cause to believe that the auto seized is carrying contraband. In cases where the securing of a warrant is practicable, it should be done, however, where seizure is impossible except without a warrant, the seizing officer acts lawfully when his actions are predicated on probable cause. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543.

Applying this criteria to the facts confronting the Morgan County deputies, we see they had reason to believe that a crime had been or was being committed.

The elements of this case comply with the requisites for stopping and investigating which were enumerated in United States v. Bonanno, D.C., 180 F.Supp. 71:

"(1) belief by the officer involved that a crime might have been committed; (2) reasonable grounds for such a belief and (3) absolute necessity for immediate investigatory activity."

As the deputies approached the Fennell vehicle, they saw empty beer bottles or cans near the front seat and a full can lying on the seat. They also observed boxes of Robitussin A. C. between the front and the back seat. When asked what he had in the trunk, Fennell replied, "Clothes."

The Sheriff's tip, the personal observations of the officers, and the appellant's possession of beer in a dry county collectively, demonstrated factors of a highly suspicious nature and made it imperative for the officers, in the proper performance of their duty, to search the trunk.

In conclusion, we find the actions of the deputies to have been proper and necessary under the circumstances and in no way violated or infringed the Constitutional rights of appellant. Accordingly, the motion to suppress was properly denied.

We have searched the record as directed by the Code of Alabama 1940, Recompiled 1958, and finding no error, we affirm.

Affirmed.

ALMON, TYSON and HARRIS, JJ., concur.

CATES, Presiding Judge (concurring specially):

I would save all the other questions ably discussed by Judge DeCarlo for a better vehicle for judicial expression. In the case sub judice, I should prefer to rest our decision on the appellant's consent to the search.