320 So.2d 764
**Donald COOK**

v.

**STATE.**

**6 Div. 887.**

Court of Criminal Appeals of Alabama.

Oct. 1, 1975.

William J. Baxley, Atty. Gen., and Carol Jean Smith, Asst. Atty. Gen., for the State.

Elliott, Laird & Byars, Jasper, for appellant.

HARRIS, Judge.

Appellant was convicted for the illegal possession of narcotic drugs contrary to the provisions of the Alabama Uniform Controlled Substances Act. He was sentenced to a six-year term in the penitentiary. He was represented by a court-appointed lawyer. At arraignment he pleaded not guilty. He is in this court with a free transcript and trial counsel was appointed to represent him on this appeal.

Mr. Larry M. Ingle testified that on February 4, 1974, he was a police officer of the City of Birmingham, assigned to the United Narcotics Detail Operation; that around 7:30 p. m., on February 4, he received a call from a reliable informant telling him that appellant had a quantity of

pills and was going to try to sell these pills that night or the next day. His informer was a federal officer, Mr. Gene McGinnis, with the Alcohol, Tobacco and Firearms Division of the U.S. Treasury Department.

After talking to Mr. McGinnis, Officer Ingle and two deputy sheriffs of Jefferson County and two ABC agents left Birmingham and went to appellant's home in Carbon Hill, Walker County, Alabama, and set up a surveillance of appellant's home. The time they arrived was 9:00 p. m., and they kept the home under surveillance until 2:30 a. m. on February 5, 1974. The lights in appellant's home were on when the officers arrived and they saw appellant's car but did not see him. The officers started watching appellant's house again at 5:30 a. m. on that date. At approximately 8:45 a. m. appellant came out of his house and got in a Buick automobile with a 70—tag and drove around for about ten minutes and returned home. At about 9:05 he got in a white Ford pickup truck and drove to Wright's Service Station, where at 9:12 a. m. he talked with three white males in a red Ford. They attached a U-Haul trailer to the pickup, and the officer did not see appellant again until 12:00 o'clock noon when he returned to his home. At approximately 2:10 p. m. a new Ford pickup came to appellant's house. Appellant got in this pickup and they rode around Carbon Hill for about ten minutes. At this time Officer Ingle got a second call via radio from Officer McGinnis advising him that appellant was riding around town to see if there were any strange cars or strange people in the area. On this second call Officer Ingle was informed that appellant had some pills stored in the rear of his house. This call came at 2:20 p. m.

At approximately 2:30 p. m. appellant returned home and went in the front door of his house. Five minutes later appellant walked to the rear of his house, bent over and picked up something and walked back from the rear of his house. All of appellant's movements were observed by Officer Ingle with a pair of binoculars. At about 2:40 p. m., he came out of his house and got in his Chevrolet automobile, tag number 70–443 and headed toward Jasper, Alabama, on Highway 78. At this time Officer Ingle received a third call informing him that appellant had the pills in his possession and was taking them to an Amoco Station in Jasper where he was going to meet someone and sell them to a Mr. Grady Hubbard who lived in the Pineywoods section of Jasper. On this third call Ingle was told that appellant could be armed. Officer Ingle got in pursuit of appellant but felt he was too far behind to overtake him and he called the radio dispatcher in Jasper and told him that he was in pursuit of a vehicle giving him the tag number of the car and a description of the automobile. He also told the dispatcher that the driver of this car was wanted for violating the Alabama Uniform Controlled Substances Act, and it was possible he could be armed.

Police Officer Hyche of the Jasper Police Department stopped appellant and got him out of the car and patted him down. About this time Officer Ingle pulled up and placed appellant under arrest and the time was 3:04 p. m. He was searched and the officer found three plastic vials which contained an assortment of pills and capsules which the officer testified were similar to pills that he had seen previously that were in violation of the Uniform Controlled Substances Act. He further testified that he placed the vials in three separate envelopes, sealed the envelopes and put his initials "L.M.I." on the flaps and observed Sergeant George Hayes place his initials "G.H." on the flaps. Ingle gave Hayes the three envelopes to take to the toxicologist. Two of the vials or bottles were found in appellant's sweater pocket and one in his pants pocket. One of the bottles had a prescription label on it in the name of Betty Cook.

Mr. Arthur Craig Bailey testified that he was employed by the State Department

of Toxicology and Criminal Investigation and was stationed in Birmingham. His qualifications were proven by the state and he stated that Sergeant George Hayes personally delivered three envelopes to him on February 6, 1974. He conducted a chemical analysis on these pills and found a number of them to be uncontrolled pills. He further testified that a number of the pills he analyzed contained 120 milligrams of amphetamine, 284 milligrams of phendimetrazine, 120 milligrams of phentermine and 65 milligrams of chlorphentermine, all of which are regulated by the Uniform Controlled Substances Act.

Under the direction of the court Mr. Bailey separated the unregulated pills from the controlled pills. All of the controlled pills were placed in one envelope and introduced in evidence over the objections of appellant that they were illegally seized by the officers without a search warrant.

Appellant testified in his behalf and denied having in his possession any drugs that were controlled substances. He said he had already been searched by the Jasper police officer who stopped him prior to the arrival of Officers Ingle and Hayes. He claimed that the state officers framed him. He stated that when Officer Hayes searched him he "come up with hands full of everything." In essence, he claims that Hayes "planted" the drugs in his sweater and pants pocket. To put it in his words, he stated, "They come up with something in their hand. I mean I didn't see them come up with it in their hands. All I know is when they got through, they had it in their hands."

Appellant admitted that he had previously been convicted for violating the Uniform Controlled Substances Act for which he was sentenced to a term of four years in the penitentiary. As a matter of fact, the trial judge ordered the Department of Corrections to return appellant to the Walker County Jail so that his appointed counsel would have ample time to confer

with him in preparation for the trial in the instant case.

In rebuttal the state called Mr. Benny Hyche, a police officer with the City of Jasper. Hyche testified that he received a radio message from headquarters that narcotic agents were trailing this car and needed help to stop him. He was given a full description of the car including the tag number. He stated that he fell in behind this car coming east on the 78 Bypass and turned the lights on him as he went under a red light. Appellant stopped his car and got out of the car and said, "I'm sorry officer, for running that red light." The officer ordered him to put both hands on top of the car and he gave him a general "pat down." During this frisk he felt some bottles in his sweater pocket. When the narcotic agents arrived, he told them he felt some bottles in his sweater pocket and was present when the agents searched appellant. He observed them remove two bottles from appellant's sweater pocket. He did not remove anything from appellant's pockets. The agents searched the car and found what turned out to be a bb gun.

Prior to trial appellant filed a motion to suppress the narcotics found in the search of appellant's clothing on the grounds that they were obtained by an illegal search and seizure and there was no probable cause to stop his automobile. He further claimed that the officers had ample time to obtain a search warrant. After hearing the testimony of Officer Ingle, detailed above, the court overruled the motion to suppress.

Appellant also requested the affirmative charge which was refused. Appellant filed a motion for a new trial but no evidence was offered in support thereof. The argument on the motion for a new trial raised the same legal issues that appellant raised during the trial. The motion for a new trial was overruled.

█ The fact that an informant reported to one officer who in turn relied on

other officers to make search and arrest did not invalidate search or arrest. *United States v. Robinson,* 5 Cir., 457 F.2d 1304, certiorari denied, 409 U.S. 863, 93 S.Ct. 155, 34 L.Ed.2d 111.

■ Where an officer who has probable cause to make an arrest radios ahead to have an automobile stopped the officers who stop such automobile have probable cause to arrest without a warrant and the ensuing search of the automobile is valid. *Kiel v. United States,* 5 Cir., 406 F.2d 1323.

In *Fennell v. State,* 51 Ala.App. 23, 282 So.2d 373, this court said:

"Reasonable ground for belief of guilt or probable cause means more than a good faith suspicion. Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. The measure of legality of a seizure of an automobile without a warrant is whether that seizing officer has reasonable or probable cause to believe that the auto seized is carrying contraband. In cases where the securing of a warrant is practicable, it should be done, however, where seizure is impossible except without a warrant, the seizing officer acts lawfully when his actions are predicated on probable cause. *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543."

■ There are six exceptions under which warrantless searches have been upheld: (1) plain view, (2) with consent voluntarily and knowingly given, (3) incident to a lawful arrest, (4) hot pursuit or emergency situations, (5) exigent circumstances coincidental with probable cause as in the case of movables, and (6) stop and frisk situations. *Daniels v. State,* 290 Ala. 316, 276 So.2d 441.

■■ Exceptions 3, 4 and 5, supra, apply with full force and effect to this case.

The time frame in which the officers had appellant under surveillance and his movements and activities afforded no time to seek the issuance of a search warrant. It was not until Officer Ingle received the third radio dispatch that appellant was leaving his home to go to Jasper to sell and deliver the drugs did he have probable cause to believe that appellant actually had in his possession illegal drugs. At this point prudence dictated that he pursue the fleeing vehicle and radio the Jasper Police Department for aid in stopping appellant.

In *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, the Supreme Court held:

" 'In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' *Brinegar v. United States,* supra, 338 U.S. (160) at page 175, 69 S.Ct. (1302) at page 1310, (93 L.Ed. 1879). Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288."

■ It is sufficient to prove so much of an indictment as shows that the defendant has committed a substantial offense therein specified. *Owens v. State,* 291 Ala. 107, 278 So.2d 693; *Parks v. State,* 46 Ala.App. 722, 248 So.2d 761.

■ "Where the evidence presented raises questions of fact for the jury, and

sustain conviction, the denial of a motion to exclude the state's evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error." *Young v. State,* 283 Ala. 676, 220 So.2d 843.

Appellant strenuously insists that Officer Ingle did not have probable cause to arrest appellant. We do not agree.

■■ Here, the caller's story is not corroborated by other sources or by the fact that he had previously given accurate information, but the story is corroborated by other facts stated by the caller as true of his own knowledge. The other corroborating facts are that events predicted by the caller happened almost precisely as foretold. The caller in the instant case was tested in the instant case. The accuracy of his information was tested in every particular. This being so, we are of the opinion that the hearsay and its reliability were sufficiently shown to justify a reasonable man in believing that appellant was in possession of narcotics and was on his way to Jasper, Alabama, to make a sale. *Clenney v. State,* 281 Ala. 9, 198 So.2d 293.

We have carefully examined the record for any reversible error injuriously affecting the substantial rights of appellant and have found none.

It is our opinion that the judgment of the trial court should be, and is, affirmed.

Affirmed.

TYSON, DeCARLO and BOOKOUT, JJ. concur.

CATES, P. J., concurs in result.