Appellant was convicted of possessing heroin as charged in the indictment. The Court fixed his punishment at seven years imprisonment in the penitentiary. Prior to arraignment he was found to be indigent and counsel was appointed to represent him during arraignment and the trial. He pleaded not guilty. After conviction he was furnished a free transcript and trial counsel was appointed to represent him on appeal.
Appellant raises two issues on this appeal in which he contends he is entitled to a reversal, (1) that appellant's person was searched without probable cause and without a search warrant, and (2) the State struck all blacks on the strike list panel.
We will answer these contentions in the order presented.
Lamar Hadden, an enforcement agent of the Alabama ABC Board, who was assigned to the Alcohol and Drug Division, testified that at approximately 4:00 p.m., on December 3, 1974, he received a telephone call from an informer who said he had seen Clifford Baker, appellant, with heroin on his person and that appellant was with one Frank Jackson in a blue 1970 Buick automobile in front of Johnson Homes Apartments where appellant lived. Hadden further testified that he had known appellant for several years. The informer told Hadden that appellant and Frank Jackson were going to deliver the heroin from Jackson's home to 211 Adams Street. The informer told Hadden that both Jackson and appellant had heroin on their persons and they were in a parking lot in front of the residence of appellant.
Hadden stated that his informer was a reliable and creditable person who had furnished him good information in the past that proved to be entirely accurate. He said the informer had previously given him information that led to the arrest and conviction of four persons charged in drug cases: Dwight Baker, Melton Foster, Johnny Johnson and Memphis Junior Jones. *Page 856 
Hadden further testified that immediately after getting the informer's telephone call, he got in his automobile and was accompanied by Police Officer Wallace Williams and they started to appellant's residence. They turned left on South Street and headed straight to the Johnson Homes Apartments when they met a 1970 blue Buick. The officers turned around and followed the blue Buick for several blocks. The traffic was heavy and they got to the three hundred block of North Cherry Street before they could get the Buick to pull over and stop. Officer Hadden went to the passenger's side where appellant was sitting and Officer Johnson went to the driver's side. There was a black female in the car with appellant and Jackson.
Officer Hadden ordered appellant to get out of the car and after getting out of the car the officer patted him down. Appellant had on a black leather jacket and was wearing a yellow cap. After patting him down he reached in the black leather jacket and got ten little plastic bags that were wrapped in tinfoil inside the black jacket. While holding the package in his hand, appellant grabbed the bag from the officer's hand and ran. The officer ran after him and saw him throw the package down in the middle of the street and he kept running. The officer followed him for some distance and realized that he was unable to catch him, so he turned around and came back and picked up the package that appellant had thrown in the street. After he got back to the patrol car, he gave the package to Police Officer Wallace Williams. They then took Frank Jackson and the female occupant of the car to the Dothan City Jail. Approximately 25 minutes later Officer Hadden got a telephone call from the same informer who had told him about the heroin being in the possession of appellant and in this telephone call the informer told Officer Hadden that appellant had returned to his residence, Apartment Number 5, in the Johnson Homes Apartments. The officers secured a search warrant and went to the apartment and knocked on the door. A black female came to the door and the officer identified himself but the woman would not take off the night latch to the door. Officer Hadden pushed against the door until he broke the night latch and he and the other officers entered the apartment and they found appellant in one of the bedrooms sitting in a chair looking at television. He saw the black leather jacket from which he had taken the heroin, lying on the bed. Appellant was carried to the City Jail.
On cross-examination Officer Hadden testified that he told appellant that he was under arrest at the time he patted him down and got the white powder out of his black leather jacket. He further testified that he had known the appellant since 1970 and had seen him around the Johnson Homes Apartments on several occasions. He stated that while appellant was running he lost the yellow cap that he was wearing and the officers found it.
Police Officer Wallace Williams testified to substantially the same set of facts as were related by Officer Hadden. He stated that he knew both appellant and Frank Jackson whose nickname was "Fish" and that he recognized both of them when they stopped the car; that he went to the driver's side while Officer Hadden went to the passenger's side. That he asked "Fish" for his identification, that is, his driver's license and told him that he was a police officer and to put the car in park, switch it off, and for all three to get out of the car with their hands on top of the car. He further testified that while he was examining "Fish's" driver's license, he told him that they had information that he and appellant had heroin in the car and that they wanted to search the automobile. He further testified that when appellant got out of the car, Officer Hadden reached into one of the pockets of his jacket and removed the little plastic-like bag and was holding it in his hand looking at it when all of a sudden appellant grabbed the bag and ran and that Officer Hadden ran after him. That a short time later Officer Hadden returned to the automobile and handed him the plastic container containing some tinfoil packets. He further testified that a little later they *Page 857 
ran a field test on the white substance in the plastic bag and determined that it was heroin. He stated that he took the ten small tinfoils in the plastic bag and folded them up and put them in a manila envelope and took this to the office and locked it in a file cabinet; that it stayed in the file cabinet until he turned it over to Sergeant McCord of the Dothan Police Department who carried it to the Crime Laboratory in Enterprise, Alabama.
He corroborated the testimony of Officer Hadden that some 25 or 30 minutes after they had carried the driver and the female passenger to the Dothan City Jail, Officer Hadden got a telephone call advising him that appellant was now back at his apartment. He testified that they secured a search warrant and went to the apartment to conduct a search. They knocked on the door and a woman named Mamie Davis to whom the apartment was rented came to the door. They identified themselves and told her they had information that appellant was there and she asked them if they had a search warrant and she was advised that they did have a search warrant, but she would not open the night latch. Officer Hadden bumped the door with his shoulder and broke the night latch and the officers went in.
Under questioning by the trial judge, Officer Williams testified that he took the package turned over to him by Officer Hadden and put it in a file locker and locked it up; that two or three days later Sergeant McCord was going to Enterprise, and Williams unlocked the file cabinet and took out the package and gave it to McCord to deliver to the Crime Laboratory in Enterprise. He further testified that the package was in the same condition when he turned it over to McCord as it was when he took it into his possession originally, except for a small portion that he took out to make the field test.
The State called Sergeant James R. McCord who testified that he was employed as a police officer with the City of Dothan and had been assigned to work on the Narcotics Detail with Officers Williams and Hadden. McCord testified that Officer Williams turned over to him the same package that Hadden had given him a few minutes after they had stopped the 1970 Buick automobile. That this package was locked in a cabinet and it was placed in his custody to carry to the Crime Laboratory in Enterprise; that he personally delivered this package to Ms. Melinda Long at the Toxicology Laboratory in Enterprise. He said the envelope was properly sealed and stamped at the time he delivered it to the Crime Laboratory and it was in the same condition when he gave it to Ms. Long as it was when he took it out of the locked file cabinet.
Ms. Melinda Long was called as a witness for the State and testified that she was employed as a criminologist at the Enterprise Crime Laboratory of the State Department of Toxicology, and that her main job was to conduct analysis to determine the contents of materials turned over to the Department of Toxicology. She further testified as to her education, experience, training and her qualifications and that during the time she had been at the Enterprise Laboratory, she had conducted approximately 100 tests on substance thought to be heroin.
She further testified that on December 5, 1974, she received from Officer J.R. McCord a manila envelope which contained ten individual packets that were in tinfoil, that she conducted an analysis on each of these ten separate foil packages and found that each contained heroin.
At this point the State rested its case and appellant made a motion outside of the presence and hearing of the jury to suppress the introduction of the heroin in evidence because appellant was not under arrest at the time the heroin was removed from his jacket; that the search was not incident to an arrest and further that the State had failed to make out a prima facie case. This motion was overruled.
The defendant called Mamie Lou Davis who testified that she rented Apartment 5 in the Johnson Homes Apartments in Dothan, Alabama, and that she had known *Page 858 
appellant since about 1973; that he was her boyfriend and was living with her and she had a child by him. She further testified that she remembered the day that he was arrested for possession of heroin and on that date he was at her home all day long. She testified that appellant had three people come to visit him at her apartment on that date and one of them was a guy called "Fish", a woman, and another man whom she did not know. She said that they came at about 3 o'clock and that "Fish" was talking to appellant in an angry tone of voice about some money that he previously had loaned him to pay rent and that appellant told "Fish" that he had been out of work and didn't have the money to pay him at that time but that he would pay him later. All three of them got in the car and left. She was positive in her testimony that appellant did not leave the apartment all day on December 3, 1974, until the police came and arrested him.
Appellant testified in his behalf and in sum, his testimony was the same as that of Mamie Lou Davis. He denied that he was in the automobile that was driven by Frank Jackson at the time it was alleged to have been stopped by the officers and he denied that he was in the car or that he had any heroin on his person. In short, his complete defense was that of an alibi. Appellant filed a motion for a new trial in which he raised the two issues heretofore mentioned in this opinion, namely, that appellant was unconstitutionally searched without a warrant and that the Court erred in permitting the State to introduce evidence respecting the fruits of that search and also that all blacks on the jury venire that was called to serve as jurors in appellant's case were all struck by the State in violation of appellant's constitutional rights.
The Clerk of the Circuit Court of Houston County was called as a witness in support of appellant's motion for a new trial. She testified that she made up the jury list from which the jury was struck in appellant's case and that she did not know the composition of the jury list at the time it was made up but at the suggestion of appellant's counsel, she went back and checked and found that the State struck all blacks on the jury list and four white jurors. Appellant struck all white jurors until there were twelve left on the list to try appellant. At the conclusion of the hearing the Court overruled and denied the motion for a new trial.
Title 15, Section 154, Code of Alabama, provides that an officer may arrest any person, without a warrant, when a felony has been committed and he has reasonable cause to believe that the person arrested committed it.
In Fennell v. State, 51 Ala. App. 23, 282 So.2d 373, this Court held:
 "Reasonable ground for belief of guilt or probable cause means more than a good faith suspicion. Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed. The measure of legality of a seizure of an automobile without a warrant is whether that seizing officer has reasonable or probable cause to believe that the auto seized is carrying contraband. In cases where the securing of a warrant is practicable, it should be done, however, where seizure is impossible except without a warrant, the seizing officer acts lawfully when his actions are predicated on probable cause. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543."
In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329,3 L.Ed.2d 327, the Supreme Court said:
 "Nor can we agree with petitioner's second contention that Marsh's information was insufficient to show probable cause and reasonable grounds to believe that petitioner had violated or was violating the narcotic laws and to justify his arrest without a warrant. The information given to narcotic agent Marsh by `special employee' Hereford may have been hearsay to Marsh, but coming from one employed for that purpose and whose *Page 859 
information had always been found accurate and reliable, it is clear that Marsh would have been derelict in his duties had he not pursued it. And when, in pursuing that information, he saw a man, having the exact physical attributes and wearing the precise clothing and carrying the tan zipper bag that Hereford had described, alight from one of the very trains from the very place stated by Hereford and start to walk at a `fast' pace toward the station exit, Marsh had personally verified every facet of the information given him by Hereford except whether petitioner had accomplished his mission and had the three ounces of heroin on his person or in his bag. And surely, with every other bit of Hereford's information being thus personally verified, Marsh had `reasonable grounds' to believe that the remaining unverified bit of Hereford's information — that Draper would have the heroin with him — was likewise true.
 "`In dealing with probable cause, * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U.S. 160, at page 175, 69 S.Ct. 1302, at page 1310, 93 L.Ed. 1879. Probable cause exists where `the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543."
In the instant case the informer had proved to be reliable and creditable and had given accurate information that resulted in the arrest and conviction in four previous drug cases. The facts stated by the caller proved to be true of his own personal knowledge. The other corroborating facts are that events predicted by the caller happened almost precisely as foretold. The accuracy of his information was tested in every particular. He told Officer Hadden that he had personally seen appellant and Jackson in possession of heroin and they were in a blue 1970 Buick automobile and they were going to deliver the heroin to 211 Adams Street. This being so, we are of the opinion that the hearsay and its reliability were sufficiently shown to justify a reasonable man in believing that appellant was in possession of heroin and he and Jackson were on their way to the Adams Street address to make a sale, and they would have accomplished their mission if the officers had not stopped the Buick automobile. Clenney v. State, 281 Ala. 9,198 So.2d 293; Cook v. State, 56 Ala. App. 250, 320 So.2d 764; Gilbreathv. State, 54 Ala. App. 676, 312 So.2d 81.
The time frame in which the officers had to get a search warrant in this case after receiving the telephone call from the informer afforded no time to seek the issuance of a search warrant. There are six exceptions under which warrantless searches have been upheld: (1) plain view, (2) consent voluntarily and knowingly given, (3) incident to a lawful arrest, (4) hot pursuit or emergency situations, (5) exigent circumstances coincidental with probable cause as in case of movables, and (6) stop and frisk situations. Daniels v. State,290 Ala. 316, 276 So.2d 441.
If there was ever a case of "exigent circumstances coincidental with probable cause", this is such a case. If the officers had failed to act upon the information imparted to them by the informer, they would have been guilty of imprudence and gross neglect of duty.
The peremptory striking of Negroes by the District Attorney in a particular case is not a denial of equal protection of the laws. Thigpen v. State, 49 Ala. App. 233, 270 So.2d 666; Swainv. State of Alabama, 380 U.S. 202, 85 S.Ct. 824,13 L.Ed.2d 759.
We find no reversal error in the record and the case is affirmed.
AFFIRMED.
All the Judges concur, except CATES, P.J., not sitting. *Page 860