Mona Upshaw, the plaintiff in this action alleging false arrest and false imprisonment, appeals from a summary judgment entered in favor of the defendants Timothy Glenn McArdle, Edward Neil Byrd, and Brooks Burdette, all police officers with the City of Hoover.
"In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact" and whether the movant was "entitled to a judgment as a matter of law." Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v.South-Trust Bank of Baldwin County, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). However, our review is subject to the caveat that this Court *Page 877 
must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990).
Viewed in such a manner, the record reveals the following facts. On the evening of January 29, 1990, Mona Upshaw and a companion, Mona Letson, went shopping at the Galleria mall in Hoover. After visiting another store, they entered the Parisian department store and made their way to the junior's department, where they wanted to look at bathing suits. No salespeople were nearby, so each woman selected several bathing suits from a display and took them into the dressing room in order to try them on. The dressing room had three separate private stalls. Eventually, the women decided that they did not wish to purchase any of the suits, so they returned them to the display racks.
Upon exiting the dressing room, Upshaw and Letson noticed that a man and woman were watching them. The man and woman followed them as they went to the children's department and then to the dress department. Letson found a dress that she wanted to try on, and she took it to the dressing room in that department. Upshaw accompanied her into the dressing room, but did not enter Letson's private stall. Letson decided not to purchase the dress and returned it to its display rack.
While still in the dress department, Upshaw and Letson were approached by the man and woman who they had noticed were watching them. The man and woman informed Upshaw and Letson that they were security personnel for Parisian and that they needed to speak to them, and then they escorted the two women to an office in the rear of the store. Once inside the office, the male security guard pulled a bathing suit out of a shopping bag he was carrying and accused Upshaw and Letson of attempting to steal it. In response, Upshaw and Letson denied the accusation. However, the security guard telephoned the Hoover Police Department and requested that an officer be sent to the store.
Shortly thereafter, Officers Byrd and Burdette arrived at the store's office. Officer Byrd stepped outside the office and spoke with the security guards, while Officer Burdette remained with Upshaw and Letson. The security guards informed Byrd that Upshaw and Letson had been observed concealing several bathing suits on their persons while in a dressing room and then keeping the suits concealed as they moved through the store. They informed Byrd that after Upshaw and Letson left the dress department dressing room, the female security guard entered the dressing room area and found one of the bathing suits. When Byrd and the security personnel returned to the office, Upshaw and Letson's jackets and purses were searched. However, nothing incriminating was found. Upshaw and Letson were read theirMiranda rights and were transported to the Hoover city jail.
Following the arrest, Byrd prepared an Alabama Uniform Incident/Offense Report. That document contained a concise statement of facts regarding the incident; Byrd and the female security guard signed that statement. It read:
 "# 8 [the female security guard] stated that she observed suspects conceal a total of 8 swimsuits on their persons and walk around the store. # 8 followed them throughout the store. She checked the dressing rooms just prior to suspects entering [and] after they left dressing rooms, # 8 searched them and found one bathing suit (listed in # 60 
# 61) in the room. Suspects were detained by security. Police arrived on the scene, mirandized [sic] the suspects, arrested them, and transported them to Hoover City Jail."
Upshaw and Letson were held overnight in the jail and, the next morning, each met separately with McArdle, an officer in the police department's business services unit who had been assigned to investigate the alleged theft. McArdle informed Upshaw of her Miranda rights, but she declined to see an attorney. McArdle questioned Upshaw about the alleged theft, but she continued to deny any involvement and was returned to her cell. McArdle then questioned Letson and after questioning she also was returned *Page 878 
to her cell. Thereafter, McArdle telephoned the Parisian store and spoke to a representative about the arrest, which McArdle had become uncomfortable with. However, the telephone conversation did not abate McArdle's concerns; he decided that at that time he did not have enough evidence to obtain an arrest warrant for either Upshaw or Letson.
McArdle had Upshaw brought out from her cell and asked her to sign a document releasing Parisian, the Parisian security personnel, the Hoover Police Department, and Officers Byrd and Burdette from any liability arising out of the arrest. McArdle informed her that she did not have to sign it, but could do so if she wanted to. Upshaw read the release and told McArdle that she wished to make a telephone call to her father and to discuss it with him before she signed it. Upshaw was returned to her cell. Only after Letson was taken from her cell to speak with McArdle and signed the same type of document that had been offered to Upshaw was Upshaw removed from her cell and allowed to telephone her father. Upshaw did not sign the release; however, both Upshaw and Letson were freed from custody. The Hoover Police Department never obtained an arrest warrant for either Upshaw or Letson, and the charges — second degree theft — were dropped.
On December 21, 1990, Upshaw sued Parisian and several fictitiously named defendants. Her complaint contained counts alleging false arrest, false imprisonment, assault and battery, and libel. She amended the complaint on March 11, 1993, to name McArdle, Byrd, and Burdette as defendants and to allege the same claims against them. In addition, the complaint added a claim alleging outrageous conduct against McArdle. On March 31, 1993, Upshaw dismissed all her claims against Parisian. Defendants McArdle, Byrd, and Burdette moved for a summary judgment on January 13, 1994. The court entered a summary judgment on February 7, 1994. The court denied Upshaw's subsequent motion to alter, amend, or vacate the judgment, and she appealed on May 2, 1994.
On appeal, Upshaw argues only that the summary judgment was improper as to her claims of false arrest and false imprisonment. Thus, the issue whether it was proper as to any of Upshaw's other claims against McArdle, Byrd, and Burdette, is not properly before this Court.
 I.
We must first determine whether the summary judgment was proper for Byrd and Burdette on the false arrest and false imprisonment claims. "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code 1975, § 6-5-170. Thus, a wrongful or false arrest will also support a claim for false imprisonment. Upshaw contends that the summary judgment in favor of Byrd and Burdette is improper because, she claims, their arrest of her violated Ala. Code 1975, § 15-10-3, the statute authorizing warrantless arrests, because, she says, they did not have probable cause to believe that she had committed a felony.
" 'Probable cause exists where the facts and circumstances within the officer's knowledge and of which he has reasonable trustworthy information are sufficient to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' " Bush v. State, 523 So.2d 538, 543
(Ala.Crim.App. 1988), quoting Knight v. State, 346 So.2d 478, 481
(Ala.Crim.App. 1977), cert. denied, 346 So.2d 483 (Ala. 1977). Further, "[i]nformation received from someone who is a witness to a crime can be considered reliable." S.C. v. State,574 So.2d 1032, 1034 (Ala.Crim.App. 1990).
The evidence shows that Byrd and Burdette's arrest of Upshaw was based on information supplied by Parisian security personnel, particularly the statement of the female security guard that she had observed Upshaw and Letson concealing several swimsuits on their persons. We conclude that this information was sufficiently trustworthy to constitute probable cause for Upshaw's arrest. Although Upshaw denies committing the act for which she was arrested, we have held that "a general denial of guilt does not create a jury question on the issue of probable *Page 879 
cause." Lindsey v. Camelot Music, Inc., 628 So.2d 314, 315-16
(Ala. 1993). The trial court properly entered the summary judgment as to Byrd and Burdette.
 II.
We must next determine whether the summary judgment was proper as to McArdle on the false imprisonment claim against him. Upshaw's claim against McArdle is not based on her arrest. Upshaw contends that McArdle falsely imprisoned her by having her returned to her cell in the Hoover city jail after he had already determined that she should be released from custody; she contends that he did not release her immediately because she declined to sign the document releasing Parisian and the Hoover Police Department from any liability arising from her arrest. Thus, Upshaw alleges that McArdle falsely imprisoned her for that time while she was in the city jail after declining to sign the release form.
However, the record contains no evidence that McArdle was personally responsible for Upshaw's being returned to her cell after she had informed McArdle that she wished to telephone her father before deciding whether to sign the release. Upshaw presented no evidence that McArdle personally returned her to her cell or instructed another officer to do so. Thus, although Upshaw presented evidence that she was held without her consent at the Hoover city jail for some time after McArdle had determined that there was insufficient evidence to obtain a warrant on the charge against her, she presented no evidence to support a false imprisonment claim against McArdle. Accordingly, the summary judgment was also proper as to the defendant McArdle.
AFFIRMED.
MADDOX, SHORES, HOUSTON and INGRAM, JJ., concur.