**Jo Ann ROSE, Plaintiff,**

v.

**TOWN OF JACKSON'S GAP, et al., Defendants.**

Civil Action No. 95–D–1434–E.

United States District Court, M.D. Alabama, Eastern Division.

Oct. 2, 1996.

Ruth Simpson Sullivan, Dadeville, AL, for plaintiff.

Alex L. Holtsford, Jr., Montgomery, AL, for defendants.

## *MEMORANDUM OPINION AND ORDER*

DeMENT, District Judge.

Before the court is defendants'[1] motion for summary judgment and memorandum brief in support thereof, filed June 10, 1996.[2] In opposition, plaintiff Jo Ann Rose filed a counter-affidavit on June 28, 1996. On September 13, 1996, defendants supplemented their brief by letter, and plaintiff submitted her memorandum brief in opposition to the motion for summary judgment. Plaintiff then submitted her reply brief to defendants' supplemental brief on September 19, 1996. Also on September 19, 1996, defendants filed a motion to strike unsupported statements of "evidence" found in plaintiff's memorandum brief in opposition to the motion for summary judgment, as well as their reply to plaintiff's memorandum brief in opposition to the motion for summary judgment. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court finds that the defendants' motion is due to be granted in part and denied in part.

### JURISDICTION AND VENUE

Based upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), and 1367, the court properly exercises subject matter jurisdiction over this action. The parties do not contest personal jurisdiction or venue.

### FINDINGS OF FACT

This is an action brought under 42 U.S.C. § 1983 and alleging violations of the First,[3]

---

1. Defendants are Jimmy Sanders, Michael Parrish, and the Town of Jackson's Gap.

2. Additionally, the defendants filed the following evidence on June 10, 1996, in support of their motion for summary judgment: affidavit of Jimmy Sanders, affidavit of Michael Parrish, and excerpts from the deposition of Jo Ann Rose Dargan.

3. Although plaintiff states in her complaint that her action is brought, in part, under the First Amendment, at no time does she explain with any specificity whatsoever how the defendants violated her First Amendment rights. Consequently, the court dismisses without prejudice any potential First Amendment claim for lack of specificity.

Fourth, Fifth and Fourteenth Amendments to the United States Constitution. In Count I, plaintiff has two claims against Officer Jimmy Sanders and Chief Michael Parrish of the Jackson's Gap Police Department. First, plaintiff alleges the officers deprived her of liberty without due process of law by arresting her for disorderly conduct on November 7, 1993. Second, plaintiff alleges that the officers deprived her of her personal property without due process of law by assisting in the removal of said property. In her second count, Plaintiff brings suit against the Town of Jackson's Gap under 42 U.S.C. § 1983, for having improper policies and inadequate training in arrest and search and seizure procedures. In her final count, the plaintiff brings a pendent claim under Alabama state law for false imprisonment against all three defendants. Defendants have moved for summary judgment on all three counts. Br. of Defs.' in Supp. of Mot. for Summ. J. at 1.

In November 1993, in the town of Jackson's Gap, Alabama, plaintiff Jo Ann Dargan Rose ("Rose") was living in a mobile home with James Stallins ("Stallins"). Rose's Dep. at 6. On November 7, 1993, Rose and Stallins "had a falling out." *Id.* at 33. The two began arguing when Rose was leaving the mobile home with household items in her hands. *Id.* at 37; *see also* Rose Aff. at 1. Rose admits that during the fracas she and Stallins "had gotten into a screaming match," "screaming and hollering and carrying on." Rose's Dep. at 38, 43. Eventually, Stallins threw Rose out of the home, locked the door, and called the Jackson's Gap Police Department. *Id.* at 37.

After Stallins locked Rose out of the home, she sat on the porch and waited for the police to arrive. *Id.* at 39. She admits, however, that she was in or beside her truck and in the process of leaving the premises when a police officer arrived. *Id.* at 40–41. When Officer James Sanders ("Sanders") of the Jackson's Gap Police Department arrived in uniform on the scene, he spoke with Stallins, and then he asked Rose to leave the premises. *Id.* Rose refused and Sanders asked her twice more to leave the premises. *Id.* at 44. Rose admits that at this point she said "something snotty" to Stallins and used profanity. *Id.* at 45–46. After Rose refused to leave and she began cursing, Sanders arrested her for disorderly conduct. Sanders Aff. at 2. Rose's vehicle was impounded after her arrest and removed from her mobile home at Stallins' direction. Rose's Dep. at 100. Rose was found not guilty of the Disorderly Conduct charge. Rose Aff. at 2.

Rose states that approximately one week later she observed Sanders and Parrish "standing outside" of her mobile home with Stallins; Stallins was in the process of moving personal property from the home.[4] Rose's Dep. at 67. When Rose complained to Parrish, he refused to assist her. *Id.* at 68; Parrish's Aff. at 2. Rose contends that Sanders threatened to arrest her if she entered the property, but she also admits that she got "into a little argument" with Stallins and Sanders had to separate them and once again threatened to arrest her if she didn't leave. *Id.* at 68. Rose contends that the impoundment of her vehicle, the inaction of the police officers and the threat to arrest her violated her "guaranteed freedom to be secure in person, home and in her possessions."[5]

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the

---

4. In her affidavit completed June 20, 1996, Rose only states that Chief Parrish was present and makes no claim that Jimmy Sanders was also there. *Id.*

5. Plaintiff at no time states her claim of deprivation of property with any specificity, but instead alludes to such a claim at various intervals in the pleadings and memorandum briefs. *See* Compl. at 4; Rose's Aff. at 3–4; Rose's Dep. at 109; Pl.'s Br. in Opp'n to Mot. for Summ.J.

Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

## DISCUSSION

### I. Section 1983 Claims: Officer Sanders and Chief Parrish

Section 1983 of Title 42 of the United States Code creates a mechanism for recovering monetary damages from and securing injunctive relief against governmental actors and entities whose actions under color of state or local law deprive a plaintiff of rights, privileges, or immunities secured by the United States Constitution or federal statutes. In Count I of her complaint, Rose alleges that she is entitled to recovery under 42 U.S.C. § 1983 against Officer Sanders and Chief Parrish in their individual capacities because they allegedly deprived her of liberty without due process and effected an unconstitutional seizure of property by "assisting" in the theft and impoundment of her personal property.

Both Sanders and Parrish claim they are immune from suit under the well-established doctrine of qualified immunity. When faced with the doctrine of qualified immunity, the plaintiff can avoid summary judgment by showing that the state defendants are not entitled to qualified immunity as a matter of law or that genuine issues of material fact exist so that the question of whether the state defendants are entitled to qualified immunity is only properly determined after findings of fact have been made by the jury. *Rich v. Dollar,* 841 F.2d 1558, 1562 (11th Cir.1988).

The Supreme Court of the United States has held "that government officials performing discretionary functions generally are

shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Rich*, 841 F.2d at 1563. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

The test for whether a governmental defendant is entitled to qualified immunity from liability in his or her individual capacity involves a two-step analysis. A government official first must demonstrate that " 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.' " *Rich*, 841 F.2d at 1563–64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir.1983)). If the defendant satisfies this burden, the plaintiff must then show either that the official lacked good faith or that the official's actions " 'violated clearly established constitutional law' " or a federal statute. *Id.*

Under the second prong, the court must determine whether the applicable law was clearly established at the time of the challenged action. This is determined by reference to decisions of the Supreme Court of the United States, the Court of Appeals for the Eleventh Circuit, and, in this case, the Supreme Court of Alabama. *D'Aguanno v. Gallagher*, 50 F.3d 877, 881 n. 6 (11th Cir. 1995); *Courson v. McMillian*, 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). The relevant inquiry is "fact specific," *Rodgers v. Horsley*, 39 F.3d 308, 311 (11th Cir.1994), and the plaintiff must point to a controlling case, decided before the events at issue, that establishes a constitutional violation on "materially similar" facts. *Lassiter v. Alabama A & M Univ., Bd. of Trustees*, 28 F.3d 1146,

1150 (11th Cir.1994); *see also Cofield v. Randolph County Commission*, 90 F.3d 468, 470 (11th Cir.1996). As emphasized in *Lassiter*, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violated federal law in the circumstances." *Id.; see also Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987) (holding that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right"). The Eleventh Circuit has warned that plaintiffs must not be permitted "to discharge their burden by referring to general rules and to the violation of abstract 'rights.' " *Id.* at 1150. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Id.* (quoting *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993), *modified*, 14 F.3d 583 (11th Cir. 1994)).

The Supreme Court of the United States has stated, however, that "a necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Thus, in following the framework established in *Siegert*, the court must first establish whether the plaintiff has asserted a constitutional violation before delving into the qualified immunity analysis. *See Tinney v. Shores*, 77 F.3d 378, 381 (11th Cir.1996) (citing *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995)); *Jordan v. Doe*, 38 F.3d 1559, 1564 (11th Cir.1994).[6]

---

**6.** The court notes that, in this circuit, it may in some instances no longer be necessary to answer this inquiry. In a recent case, the Eleventh Circuit diverged from the *Siegert* order of analysis and stated that "we now think it enough to decide that there was no *clearly established* constitutional right allegedly violated by the defendants." *Spivey v. Elliott*, 41 F.3d 1497, 1498 (11th Cir.1995) (italics added). There, the panel

decided *sua sponte* to reexamine if *Siegert, supra*, required it to first determine "whether the violation of a constitutional right had been alleged" or whether it was sufficient to only decide "that there was no 'clearly established' constitutional right alleged." *Id.* at 1498.

The panel stated that, in *Spivey*, further analysis regarding the substantive right alleged would be "expensive" and burdensome to the parties:

## A. Deprivation of Liberty

■ Rose asserts that the state defendants violated her rights under the Fourteenth and Fourth Amendments, as enforced by 42 U.S.C. § 1983. She contends that Officer Sanders [7] deprived her of her liberty without due process by unlawfully and falsely arresting her without probable cause for disorderly conduct. Under the Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, persons have the right not to be arrested without probable cause. *See Motes v. Myers,* 810 F.2d 1055 (11th Cir.1987). Violation of this right may give rise to a claim for damages pursuant to § 1983. *Id.* Accordingly, the court finds that plaintiff has asserted a violation of a constitutional right.

■ Under the first prong of *Zeigler,* once a plaintiff has alleged a constitutional violation, the government official must demonstrate that he was acting with the scope of his discretionary authority when the allegedly wrongful acts occurred. "A government official proves that he acted within the purview of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Hutton v. Strickland,* 919 F.2d 1531, 1537 (11th Cir.1990) (quoting *Rich v. Dollar,* 841 F.2d 1558, 1564 (11th Cir.1988) (internal quotations and citations omitted)). In the instant case, Officer Sanders was called to the home of Rose and Stallins to handle a domestic dispute in a manner consistent with his training and education. He arrived in uniform and found Rose locked out of the house and in the process of leaving. When Sanders requested Rose leave the premises, she became argumentative and began to curse, and Sanders arrested her for disorderly conduct, pursuant to § 13A–11–7 of the Alabama Code (1995). Hence, the court finds that the Sanders' actions were undertaken in performance of his duties and were well within the scope of his discretionary authority.

■ Under the second prong of the *Zeigler* analysis, Rose must demonstrate the government official either lacked good faith or violated clearly established statutory or constitutional law in making this arrest. In her brief in opposition to the motion for summary judgment, Rose argues that Sanders lacked probable cause to arrest her. At the time that Rose was arrested, "the law was clearly established that an arrest without probable cause to believe a crime had been committed violated the Fourth Amendment." *Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir.1990). However, in a qualified immunity analysis, the issue is not probable cause but "arguable probable cause." *Id.* Therefore, the court must determine whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest Plaintiff for violation of" § 13A–11–7 of the Alabama Code (1995), which defines the crime of disorderly conduct. *Id.* The court finds that a reasonable officer could have so believed.

"Once there has been a determination that there is no 'clearly established' right, the parties can accomplish little in pursuing the question of whether there is a right at all. The same parties will win and the same parties will lose regardless of the court's decision on that point." *Id.* at 1498–99. The panel further reasoned that:

[I]n the interest of efficiency and collegiality on this Court, where there are differing views as to the substantive right, this panel has chosen to withdraw all of its prior opinion which relates to whether the complaint alleges a constitutional right so that the opinion will serve as no precedent on that issue.

*Id.* at 1499. In so deciding, however, the panel was careful not to establish precedent: in addition to stating that "[t]hose who differ with the decision ... could write it off as dictum," the panel emphasized that its decision in no way precludes a court, if deemed appropriate, from first determining whether a plaintiff has asserted the violation of a constitutional right. *Id.*

7. In her complaint, Rose alleged that both Officer Sanders and Chief Parrish unlawfully arrested her. Compl. at 3, ¶ 11. However, in her deposition, Rose admits that Chief Parrish was not present for her arrest. Rose's Dep. at 40. Moreover, in her Brief in Opposition to Motion for Summary Judgment, Rose alleges that only Officer Sanders was present during her arrest for disorderly conduct while both Chief Parrish and Officer Sanders were present during the deprivation of Rose's personal property. Pl.'s Brf. in Opp'n to Mot. for Summ.J. at 3–5.

Sanders was called to the scene of a domestic dispute. Upon his arrival and in an attempt to separate the feuding parties, he repeatedly asked Rose to leave the scene. She refused, got out of her vehicle, and began to argue with Stallins, calling him an obscene name.[8] Sanders then placed Rose under arrest for disorderly conduct. The court finds that an officer could reasonably construe Rose's behavior as violating § 13A–11–7, which defines disorderly conduct as a person "recklessly creating a risk" of "public inconvenience, annoyance or alarm" by "engag[ing] in fighting or in violent tumultuous or threatening behavior" or "mak[ing] unreasonable noise" or "using abusive or obscene language" in a public place.

Rose argues that because she was on private property she could not be arrested for creating a public disturbance. The Commentary to § 13A–11–7, however, states that this section is "designed to protect the public from being annoyed, inconvenience or alarmed." Reasonable law enforcement officers, possessing the same knowledge and in the same circumstances as Sanders, could have reasonably interpreted Rose's behavior as creating a public inconvenience, annoyance or alarm to neighbors and/or passers-by even while she was on private property. The court notes that while Rose declares repeatedly that "the law is clear" and "qualified immunity will not lie," she does not direct the court towards a single case occurring before November 1993 which discusses the parameters of § 13A–11–7 and whether it can be applied to people situated on private property. Therefore, the court finds that Rose has failed to meet her burden and show that Sanders violated clearly established statutory or constitutional law in the arrest of Rose. Accordingly, the court finds Officer Sanders is entitled to qualified immunity as a matter of law with regard to Rose's claim that Officer Sanders deprived her of liberty without due process of law.

## B. Deprivation of Personal Property

■ Rose also asserts that defendants Sanders and Parrish have deprived her of her personal property without due process of law. Under the Fourth Amendment, which is applicable to the States through the Fourteenth Amendment, persons have the right "to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." The Supreme Court of the United States has held that a "seizure of property 'occurs where there is some meaningful interference with an individual's possessory interests in that property' ... even where privacy or liberty is not implicated." *Soldal v. Cook County,* 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984)). In the instant case, Rose alleges that Chief Parrish and Officer Sanders improperly impounded her vehicle and assisted Stallins in the removal of her personal property, thereby effectuating an illegal seizure of her property in violation of the Fourth and Fourteenth Amendments. Accordingly, the court finds that plaintiff has asserted a violation of a constitutional right.

■ Officer Sanders and Chief Parrish both claim qualified immunity against Rose's claims of illegal seizure; however, with regard to these claims, they fail to demonstrate that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred. "In order for defendants to prove that they were acting within the scope of their discretionary authority, 'there must be more than a bald assertion ... that the complained-of actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] discretionary authority; there must be a showing by competent summary judg-

---

8. Under Alabama law, a police officer may arrest any person without a warrant for "[any] public offense committed or breach of the peace threatened in his presence." Ala.Code, § 15–10–3 (1995). In her reply brief to defendant's supplement brief, Rose states that she "was arrested by Officer Sanders without a warrant, on private property, for disorderly conduct, a misdemeanor, with no element of the offense being committed in the presence of the officer." Pl.'s Reply Brf. to Supp.Brf. of Def. at 1. The court rejects such a contention; Rose admits that while in the presence of Officers Sanders, she began to argue and curse at Stallins while she was in and around her driveway and vehicle. *See* Rose's Dep. at 44–46.

ment materials of objective circumstances that would compel that conclusion.'" *Beech v. City of Mobile,* 874 F.Supp. 1305, 1310 (S.D.Ala.1994) (quoting *Barker v. Norman,* 651 F.2d 1107, 1124–25 (5th Cir. Unit A 1981)).

With regard to the impoundment of Rose's vehicle, Officer Sanders offers no discussion as to whether he was acting within his discretionary authority.[9] Moreover, neither defendant offers an explanation for his presence at the Rose/Stallins mobile home on the day Stallins removed Rose's personal belongings, much less an explanation of how his presence was within the scope of his discretionary authority as a police officer for the Jackson's Gap Police Department.

Because defendants have failed to show they were acting within their discretionary authority, the court finds that they are not protected by qualified immunity. Accordingly, the court further finds that defendants' motion for summary judgment is due to be denied with regard to Rose's claim of deprivation of personal property.[10]

## II. Section 1983 Claims: Town of Jackson's Gap

■ Rose brings a separate claim under § 1983 against the Town of Jackson's Gap for having inadequate police training and improper policies relating to arrests and searches and seizures. A municipality, however, may only be held accountable for the deprivation of a citizen's constitutional rights if the deprivation was the result of a municipal custom or policy. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Specifically, the Supreme Court has held that a city's failure to train its police officers can amount to a policy or custom "[o]nly where [such failure to train] evidences a 'deliberate indifference' to the rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989). "Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." *Id.* at 389, 109 S.Ct. at 1205.

■ In order to establish a municipality's liability under *Canton,* the plaintiff must prove first that the training program was inadequate. *Id.* at 390, 109 S.Ct. at 1205. If the training is inadequate, then "the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* Moreover, "the need for such training must be plainly obvious to Department decisionmakers." *Wright v. Sheppard,* 919 F.2d 665, 674 (11th Cir.1990) (finding no actual notice of unconstitutional practices where there was "no evidence of a history of widespread prior abuse" that would put decisionmaker on notice). Rose has failed to offer any evidence to satisfy these elements.

In an effort to substantiate her claim against the Town of Jackson's Gap, Rose states in her opposition brief that there is a history of abuse of police power in Jackson's Gap. She also contends that the impoundment of her vehicle was part of a widespread "scam" concocted by either the police department or the governing body of the municipality. In a final effort to support her claim against the municipality, she states that she lost all of her personal property as a direct result of the incompetence and lack of training of the Jackson's Gap Police Department.

■ The court notes first that "to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" is insufficient to show inadequate training or policy. *Canton,* 489 U.S. at 391, 109 S.Ct. at 1206.

---

**9.** For instance, Sanders might have indicated that he impounded the vehicle pursuant to standard operating procedures. *See Beech,* 874 F.Supp. at 1310.

**10.** Although the defendants have failed to meet the first prong of *Zeigler,* the court notes that Rose has likewise failed to meet the second prong of *Zeigler.* She has not produced any fact-specific cases which would indicate that the defendants violated clearly established statutory or constitutional rights. The court warns Rose that should defendants be able to establish they were acting within their discretionary authority, then she must produce such fact-specific cases decided *before November 1993* if her action is to survive a qualified immunity defense.

Consequently, Rose's contention that her loss is evidence of inadequate training procedures or policy is insufficient. As for her claims that there is a history of widespread abuse or scams by the police department and/or the town of Jackson's Gap, these claims are neither based on personal knowledge nor are they supported with any other admissible evidence. Rose has failed to produce any evidence to support her claims that the Town of Jackson's Gap has inadequate policies and training and that such policies and training programs rise to the level of "deliberate indifference" on the part of the municipality. Therefore, the court finds that defendants' motion for summary judgment of Rose's § 1983 claim against the Town of Jackson's Gap is due to be granted.

### III. Pendent State Claim: False Imprisonment

 Rose brings a claim under state law for false imprisonment against all three defendants. "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby [s]he is deprived of [her] personal liberty." Ala. Code, § 6–5–170 (1993). "Thus, a wrongful or false arrest will also support a claim for false imprisonment." *Upshaw v. McArdle*, 650 So.2d 875, 878 (Ala.1994). Rose contends that her arrest and her subsequent imprisonment were improper because she did commit any offense in the presence of the arresting officer and, therefore, he did not have probable cause. *See* Ala.Code, § 15–10–3 (1995).

 In making an arrest, "the only requisite is that at the time the arrest is made, the police officer have probable cause."

*Carruth v. Barker*, 454 So.2d 539, 540 (Ala. 1984), citing *United States v. Seay*, 432 F.2d 395 (5th Cir.1970), *cert. denied, McGee v. United States*, 401 U.S. 942, 91 S.Ct. 949, 28 L.Ed.2d 223 (1971). As stated previously, "probable cause exists where facts and circumstances, of which the officer has reasonably trustworthy information, are sufficient to lead a reasonable [person] to believe that an offense has, in fact, been committed." *Id.*, citing *Fennell v. State*, 51 Ala.App. 23, 282 So.2d 373, 378 (Ala.Cr.App.), *cert. denied*, 291 Ala. 778, 282 So.2d 379 (1973). In accord with its findings of probable cause with regard to Rose's claim of wrongful arrest under 42 U.S.C. § 1983, the court again finds that Sanders had probable cause to arrest Rose.

As stated above, at the time Sanders arrived on the scene of the domestic dispute between Rose and Stallins, Rose was in or near her vehicle. Sanders repeatedly asked Rose to leave the premises; she refused repeatedly. She stepped out of her vehicle and began calling out to Stallins and cursing at him. At this point, Sanders arrested Rose for disorderly conduct. These facts are not in dispute,[11] and the court finds that based on the circumstances and the undisputed facts, a reasonable officer could conclude that Rose had breached the peace and violated § 13A–11–7 of the Alabama Code (1995).[12]

 Moreover, the court notes that because Sanders was acting in a discretionary function at the time he arrested Rose, he may also be protected by the doctrine of substantive immunity. The state of Alabama has long embraced the rule of "substantive immunity" as a matter of public policy.[13]

**11.** The undisputed facts in the instant case stand in marked contrast to the facts of *Franklin v. City of Huntsville*, 670 So.2d 848 (Ala.1995), where the Alabama Supreme Court held there was a jury question as to whether probable cause existed. In *Franklin*, there were a number of facts in contention. Although the plaintiff did not disagree that he refused to obey the police officer's instructions to move out of a restricted area, he contended that he did not speak in a loud voice or curse the officer. *Id.* Additionally, there was some contention as to whether the area in which the plaintiff had been standing was actually a restricted area. *Id.*

**12.** The court notes that defendant's motion for summary judgment is due to be granted as to plaintiff's false imprisonment claim against Chief Parrish. For clarification purposes, the court notes that Chief was not present at the time of Rose's arrest, and Rose has presented no evidence that she was arrested at Parrish's direction.

**13.** This public policy was codified by the Alabama legislature in 1994 with the enactment of § 6–5–338, which provides for immunity from tort liability for peace officers, including police officers employed by municipalities. Ala.Code (1995 Supp.).

*Nunnelee v. City of Decatur*, 643 So.2d 543 (Ala.1994); *see Calogrides v. City of Mobile*, 475 So.2d 560 (1985). Substantive Immunity "shields [city police] officers from liability in the exercise of their discretionary decision-making functions." [14] *Nunnelee*, 643 So.2d at 543. The court has already noted in this opinion that Sanders was behaving well within his discretionary authority when he placed Rose under arrest for disorderly conduct in violation § 13A–11–7 of the Alabama Code (1995), and, therefore, the court finds that Sanders is entitled to substantive immunity against Rose's claims of false imprisonment. *See Lightfoot v. Floyd*, 667 So.2d 56 (Ala. 1995) (holding that a police investigator detaining plaintiff for questioning was exercising a discretionary function). Accordingly, the court finds that defendant's motion for summary judgment is due to be granted as to plaintiff's pendent state law claim of false imprisonment against Officer Sanders.

As for Rose's claim against the Town of Jackson's Gap for false imprisonment, the town argues that it is immune from such suits. Alabama case law has established that generally municipalities are immune from claims of false arrest or false imprisonment.[15] *Beech*, 874 F.Supp. at 1314; *see also Bahakel v. City of Birmingham*, 427 So.2d 143, 145 (Ala.1983). Rose has cited no decisions contrary to this general principal. Therefore, the court finds that defendants' motion for summary judgment as to Rose's claim against the town of Jackson's Gap for false imprisonment is due to be granted.

## IV. Defendant's Motion to Strike Unsupported Statements

In addition to their motion for summary judgment, defendants also move the court to strike unsupported statements made in Rose's brief in opposition to summary judgment in regard to the following matters: (1) statements that the defendants were influenced by a person named "Kim," and (2) statements that it is the practice of Jackson's Gap police to impound vehicles. Defendants contend that these statements are either speculative or unsupported by any evidentiary materials found in the record. The court finds defendants' motion to strike is due to be denied.

■ Although the court finds defendants' contentions meritorious, the court finds it unnecessary to strike the statements. The court found neither assertions to be supported by any evidence and therefore did not rely on them in making its summary judgment determinations as to whether issues of material fact exist.

Accordingly, the court finds it unnecessary to strike Rose's statement and finds defendants' motion to strike is due to be denied as moot.

## CONCLUSION

Based on the foregoing, it is CONSIDERED and ORDERED that defendants' motion for summary judgment be and the same is hereby GRANTED in part and DENIED in part.

It is further CONSIDERED and ORDERED that defendant's motion to strike be and the same is hereby DENIED as moot.

---

**14.** The court notes that it is not clear from the case law whether, like the federal doctrine of qualified immunity, Alabama's substantive immunity requires not only a finding that defendants were acting within their discretionary authority, but also whether their actions violated clearly established law. In either event, the court has found at least arguable probable cause which meets the requirements of the Fourth Amendment.

**15.** The Alabama Supreme Court recently modified this line of cases, holding that where a plaintiff makes a claim of false arrest or imprisonment *and* "alleges a factual pattern that demonstrates 'neglect, carelessness, or unskillfulness'" on the part of city employees, the plaintiff has a cause of action under § 11–47–190 of the Alabama Code (1992). *Franklin v. City of Huntsville*, 670 So.2d 848, 851 (Ala.1995). So while in the past, under Alabama law, Rose normally would not have been able to make a claim against a municipality for false imprisonment, she may now do so as long as she alleges negligence by the officers. The court makes no finding as to any potential negligence claim because Rose failed to plead negligence in her Complaint or argue negligence in her briefs.