**Norma Sue BROWN, Plaintiff,**

v.

**Robert HEAD, Defendant.**

**No.  CIV.A.01—1322–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 30, 2002.

James r. Bowles, Tallassee, AL, John I Cottle, Tallassee, Al, for Plaintiff.

Daryl L. Masters, Montgomery, AL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

ALBRITTON, Chief Judge.

### I. *INTRODUCTION*

This cause is before the court on a Motion for Summary Judgment filed by Defendant Robert Head on August 30, 2002 (Doc. # 25).

The Plaintiff, Norma Sue Brown, filed a Complaint on November 21, 2001, bringing claims under 42 U.S.C. § 1983 and under state law against Elmore County, Alabama, and Robert Head. The two Defendants responded by filing separate Motions to Dismiss. (Docs # 7 & 9). On January 20, 2002, this court entered an Order dismissing all of the Plaintiff's claims against Elmore County and removing Elmore County as a Defendant in this action. (Doc # 15). The Order also dismissed all pending claims against Robert Head ("the Defendant") except for the Plaintiff's unlawful arrest claim against him in his individual capacity (Doc. # 15). Accordingly, the Defendant's Motion for Summary Judgement is directed toward the Plaintiff's only remaining cause of action: the § 1983 claim against the Defendant in his individual capacity for an unlawful arrest in violation of the Plaintiff's Fourth Amendment rights.

For the reasons to be discussed, the Defendant's Motion for Summary Judgment is due to be DENIED.

### II. *SUMMARY JUDGMENT STANDARD*

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–24, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### III. *FACTS*

On the evening of June 23, 2000, Michelle Ware called the Elmore County Sheriff's Department to report the Plaintiff for harassing behavior. The Sheriff's Department dispatched Deputy Robert Head to the trailer park where the Plaintiff and the Ware family reside to investigate the complaint. The Plaintiff was not immediately present when the Defendant arrived but returned approximately ten minutes thereafter in her own vehicle driven by Rebecca Evans. A second vehicle driven by Shenna Evans also arrived at this same time. Prior to her arrival, the Plaintiff states that she consumed approximately three beers while visiting Rebecca Evans's home.[1]

The events that occurred after the Plaintiff's arrival at the trailer park are hotly disputed by the parties. Nevertheless, the court must view the facts in a light most favorable to the Plaintiff as this case is before the court on a Motion for Summary Judgment by the Defendant. *See, e.g., Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996). Therefore, the factual narrative that follows is based on the evidentiary submissions of the parties construed in a light most favorable to the Plaintiff.

The Defendant initially walked up to the car and asked the Plaintiff what was happening. After indicating that nothing of consequence was taking place, Rebecca Evans exited the Plaintiff's car and drove away in the vehicle driven by Sheena Evans. The Defendant then told the Plaintiff that he was looking for her because of the harassment complaint. The Plaintiff responded by saying that she had not bothered anyone.

The Plaintiff proceeded to exit her car and began walking toward her trailer with the intention of going inside. As the Plaintiff attempted to unlock her trailer door, the Defendant took the Plaintiff's keys and told her that she was coming with him for harassing the Wares. Next, the Defendant physically grabbed the Plaintiff and forcefully walked her to his

---

**1.** The Defendant argues that the Plaintiff left her home only after Michelle Ware informed her that the Elmore County Sheriff would be arriving soon.

patrol car. The Defendant subsequently placed the Plaintiff in handcuffs and transported her to the Elmore County Jail.

The Plaintiff spent the night in jail and was released on bail the next day. The Plaintiff claims that the Defendant never told her that she was under arrest at the time she was taken into custody and states that she did not learn the basis for her arrest until she was released from jail.

The Plaintiff was subsequently tried on the charge of disorderly conduct in the District Court of Elmore County on November 13, 2000. After a bench trial during which the court heard testimony from the Plaintiff, the Defendant, and Rebecca Evans, the court found the Plaintiff not guilty.

The Defendant vigorously contests the Plaintiff's version of events. According to the affidavits of the Defendant and several witnesses, the Plaintiff was intoxicated [2] and belligerent when she arrived at her trailer. After exiting the car, the Plaintiff immediately began cursing at both the Defendant and the Wares. Furthermore, the Plaintiff attempted to kick the Defendant and then spit in his face and bit him. After one missed kick, the Plaintiff fell off her porch into a group of nearby bushes. At this point, the Defendant told the Plaintiff she was under arrest for disorderly conduct. The Defendant then attempted to transport the Plaintiff to his car but she continued to kick and curse so much that he was forced to pick her up in order to move her. After arriving at the jail, the affidavit of the attending corrections officer indicates that the Plaintiff was placed

in handcuffs for approximately two hours in order to stop her from constantly banging on the holding cell glass. Finally, the Defendant has produced medical records indicating that the Plaintiff went to a hospital after her release from jail and told a nurse that she had no recollection of any event from the preceding evening.

## IV. DISCUSSION

The Defendant argues that summary judgment is appropriate in this case because he is entitled to qualified immunity on the Plaintiff's claim that he violated her Fourth Amendment rights by unlawfully arresting her without probable cause.

■ Qualified immunity offers protection to government officials sued in their individual capacities under section 1983 as long as "their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Roberts*, 261 F.3d 1160, 1170 (11th Cir.2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The purpose of this immunity is to allow government officials to conduct their discretionary duties without the fear of personal liability or harassing litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002).

The Supreme Court has adopted a two-step analysis in order to determine whether a public official is entitled to qualified immunity.[3] The court must first answer the following threshold inquiry: "Taken in the light most favorable to the party asserting the injury, do the facts alleged

---

2. The Defendant argues that the Plaintiff was severely intoxicated at the time of her arrival. In support of this contention, the Defendant states that the Plaintiff's breath smelled of alcohol, that he saw a vodka bottle in the Plaintiff's car, and that the Plaintiff had a difficult time keeping her balance. Additionally, a blood alcohol test conducted twenty-two hours after the Plaintiff's arrest indicated

that she had an ethanol level of 40 mg/dl, or 0.04%. The State of Alabama defines intoxication at 0.08% for purposes of driving under the influence of alcohol *Ala.Code.* § 32–5A–191(a)(1).

3. As a preliminary matter, the court must determine whether the public official was acting within the scope of his discretionary au-

show the officer's conduct violated a constitutional right?" *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "If a constitutional right would have been violated under the *plaintiff's* version of the facts, the court must then determine 'whether the right was clearly established.'" *Lee,* 284 F.3d at 1194 (emphasis in original) (quoting *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151). Employing the above analytical framework, the following discussion reveals that the Defendant is not entitled to summary judgment on the basis of qualified immunity.

■ In the context of a wrongful arrest claim, an officer will be protected by qualified immunity if he had "arguable probable cause" to effectuate the arrest.[4] *Scarbrough v. Myles,* 245 F.3d 1299, 1302 (11th Cir.2001). Arguable probable cause exists when reasonable police officers, in the same circumstances and possessing the same knowledge as the Defendant, could have believed there was probable cause to make a warrantless arrest. *Lee,* 284 F.3d at 1195. This inquiry is objective as the

court must ask whether the officer's actions were objectively reasonable regardless of the officer's underlying motivation or intent. *Montoute v. Carr,* 114 F.3d 181, 183 (11th Cir.1997).

Because this case is before the court on the Defendant's Motion for Summary Judgment, the court is required to resolve all issues of material fact in favor of the Plaintiff and then answer the legal question of whether the Defendant is entitled to qualified immunity under that version of the facts. *Walker v. Briley,* 140 F.Supp.2d 1249, 1258 (N.D.Ala.2001). Therefore, viewing the factual submissions of the parties in a light most favorable to the Plaintiff, the central inquiry under the first step of the qualified immunity analysis is whether the Defendant had arguable probable cause to arrest the Plaintiff on the evening of June 23, 2000.

■ Under the Plaintiff's version of the facts, the Defendant did not have arguable probable cause to arrest the Plaintiff for either disorderly conduct[5] or harassment[6] as those crimes are defined under Ala-

---

thority at the time the allegedly wrongful acts occurred. *See Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988). The parties have not contested that the Defendant was acting in his discretionary capacity when he arrested the Plaintiff.

4. Arguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity analysis. *See, e.g., Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997).

5. *Alabama Code* § 13A–11–7 defines disorderly conduct as follows:

(a) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

(1) Engages in fighting or in violent tumultuous or threatening behavior; or

(2) Makes unreasonable noise; or

(3) In a public place uses abusive or obscene language or makes an obscene gesture; or

(4) Without lawful authority, disturbs any lawful assembly or meeting of persons; or

(5) Obstructs vehicular or pedestrian traffic, or a transportation facility; or

(6) Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

6. *Alabama Code* § 13A–11–8 defines the crime of harassment as follows:

(a)(1) A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person, he or she either:

a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.

b. Directs abusive or obscene language or makes an obscene gesture towards another person.

(2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.

bama law. According to the Plaintiff's evidence, at the time the Defendant placed the Plaintiff in custody, the Plaintiff had not done anything that would give a reasonable officer the impression that the Plaintiff was violating, had violated, or was about to violate either the harassment statute or the disorderly conduct statute so as to justify a warrantless arrest.[7] The Plaintiff simply arrived at her home, answered the Defendant's questions, and attempted to enter her trailer. Additionally, the Plaintiff denies assaulting the Defendant or making obscene remarks toward either the Defendant or her neighbors.

In *Rose v. Town of Jackson's Gap*, 952 F.Supp. 757, 763–64 (M.D.Ala.1996) (DeMent, J.) another judge of this court addressed a similar situation in which a police officer raised a qualified immunity defense at summary judgment against an unlawful arrest claim stemming from the plaintiff's arrest for disorderly conduct. Unlike the present case, the Plaintiff in *Rose* admitted in her deposition that she used profanity and called the officer an obscene name. *Id.* at 764. The court went on to hold that this fact created arguable probable cause to arrest the plaintiff for disorderly conduct under Alabama law. *Id.* The absence of such an admission in this case combined with the fact that the court must credit the Plaintiff's testimony at this stage of the litigation leads to the conclusion that the Defendant did not have arguable probable cause to arrest the Plaintiff for disorderly conduct or harassment. *See Webb v. Ethridge*, 849 F.2d 546, 549–50 (11th Cir. 1988) (stating that in the context of an unlawful arrest case where the plaintiff and officers submit conflicting affidavits as to the facts surrounding the arrest, the court must the credit the plaintiff's version as truthful when the officers move for summary judgment on qualified immunity grounds).

■ The central thrust of the Defendant's argument in support of summary judgment is that the court should not believe the Plaintiff's story because the Defendant has produced overwhelming evidence that contradicts it. While the Plaintiff has produced only her own affidavit and deposition testimony to document the arrest, the Defendant supports his version of events with affidavits and documentary evidence from several witnesses who have a wholly different version of the arrest. Notwithstanding the validity of the Defendant's points, the timing of this argument is misplaced as it is more appropriately directed toward the factfinder at trial, not upon a motion for summary judgment. When confronted with a motion for summary judgment, district courts cannot engage in credibility determinations and the weighing of evidence, *Mize*, 93 F.3d at 742, yet this is exactly what the Defendant asks this court to do. Put simply, the procedural posture of this case prohibits the court from disregarding the Plaintiff's affidavit and deposition testimony in favor of evidence that the Defendant considers to be the more reliable. *See Farbwerke Hoeschst A.G. v. M/V "Don Nicky"*, 589 F.2d 795, 798 (5th Cir.1979) (stating that a court "may not weigh conflicting affidavits to resolve disputed fact issues" in summary judgment motions).[8]

---

**7.** Both harassment and disorderly conduct are misdemeanor offenses in Alabama, thus a law enforcement officer may not make a warrantless arrest for these two offenses unless unlawful acts are committed in the officer's presence. *Ala.Code* § 15–10–3; *Ala. R.Crim. P.* 4.1(a). Accordingly, the only events that are relevant to the determination of arguable

probable cause are those that occurred after the Plaintiff arrived at her trailer in the presence of the Defendant.

**8.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding prece-

The Defendant also points to inconsistencies between the Plaintiff's affidavit and deposition testimony as a basis for disregarding the Plaintiff's account of her arrest. The Defendant does not expressly argue that the Plaintiff's affidavit or deposition testimony is a "sham;" rather, the Defendant contends that the inconsistencies between the two documents render the Plaintiff's version of events incredible. Under the "sham affidavit concept," a party attempts to create a genuine issue of a material fact by presenting an affidavit or deposition that contradicts a damaging portion of earlier sworn testimony. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986). The Eleventh Circuit has expressly prohibited this practice, but will disregard an affidavit or deposition only if a "party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact...and that party attempts thereafter to create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 954. In this case, the Defendant has not alleged nor produced any evidence indicating that the Plaintiff's statements rise to the level of a sham. Instead, the Defendant has pointed to discrepancies in the Plaintiff's two accounts [9] and uses these inconsistencies as a springboard to argue that the Plaintiff's version of events cannot be believed. Because this line of argument relates directly to the credibility and weight of the evidence, this argument is better raised at trial. Indeed, "[i]n light of the jury's role in resolving questions of

credibility, a district court should not reject the content of an affidavit even if it is at odds with statements made in an early deposition." *Id.*

Viewing the facts in a light most favorable to the Plaintiff, the Defendant did not have arguable probable cause to arrest the Plaintiff without a warrant on June 23, 2002. The Plaintiff's affidavit and deposition testimony reveal that she did not make any abusive remarks or engage in threatening behavior. Although the Defendant has produced evidence to the contrary and pointed out discrepancies in the Plaintiff's statements, this court would be exceeding its authority if it rendered a decision at this stage of the litigation on the credibility and veracity of the Plaintiff's evidence. Because the Plaintiff has established a violation of her Fourth Amendment rights, based on her version of the facts, the court will now move to the second step of the qualified immunity inquiry: whether the right to be free from a warrantless arrest in the absence of probable cause is "clearly established."

In *Hope v. Pelzer*, —— U.S. ——, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court recently modified the Eleventh Circuit's qualified immunity standard with respect to what constitutes a "clearly established" right. According to the Court, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" *Id.* at 2515. Even in novel factual circumstances when a partic-

dent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

9. The Defendant specifically points to two inconsistent statements. First, the Plaintiff's deposition says that the Defendant initially approached her while she was in her car, but her affidavit states that the Defendant first spoke to her while she was walking to her

trailer. Second, the Plaintiff's deposition says that she walked "pretty fast" with the Defendant to his car, but her affidavit states that the Defendant "dragged" her. Irrespective of the first inconsistency, the Defendant's second point is less persuasive because the Plaintiff's deposition also says that the Defendant "grabbed me by the arm and drug me to the car." Brown Deposition. p. 60.

ular type of conduct has not been specifically adjudicated as unlawful, the Court emphasized that public officials may be on notice that their conduct violates clearly established law if the unlawfulness of the action is apparent in light of pre-existing law. *See id.* at 2516. In short, public officials are only entitled to "fair warning" that their conduct deprived a victim of a constitutional right. *Id.* at 2515. Therefore, the salient question at this stage of the inquiry is whether the state of the law at the time of the Plaintiff's arrest gave the Defendant fair warning that his alleged treatment of the Plaintiff was unconstitutional.

■ With respect to an unlawful arrest claim, there can be no question that an arrest without probable cause to believe a crime has been committed violates the Fourth Amendment. *E.g., Von Stein v. Brescher,* 904 F.2d 572, 579 (11th Cir. 1990). Indeed, Eleventh Circuit courts have repeatedly held that this legal tenant is "clearly established" for purposes of addressing qualified immunity claims by public officials. *E.g., Id.; Herren v. Bowyer,* 850 F.2d 1543, 1547 (11th Cir.1988); *Babers v. City of Tallassee,* 152 F.Supp.2d 1298, 1304 (M.D.Ala.2001); *Rose,* at 763 Given this clarity in the law and the firmly entrenched nature of the right to be free from a warrantless arrest absent probable

cause, the court holds that under the Plaintiff's version of the facts there was no arguable probable cause and the Defendant had fair warning that his conduct was unlawful.

■ In sum, the law is "clearly established" that an arrest without a warrant or probable cause to believe a crime has been committed violates the Fourth Amendment, and a reasonable police officer would not have believed, on the Plaintiff's version of the facts, that the arrest in this case was lawful. In light of this conclusion as well as the numerous factual disputes in this case,[10] summary judgment in favor of the Defendant is not appropriate.

## V. CONCLUSION

For the reasons stated above, the Defendant's Motion for Summary Judgment is due to be and hereby ORDERED DENIED.

10. The court disagrees with the Defendant's contention that the Plaintiff has not produced sufficient evidence to create a "genuine issue of material fact." An issue is "genuine" for summary judgment purposes "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. This court's function is not "to weigh the evidence and determine the truth of the matter" but to determine whether a "fair-minded jury (or factfinder) could return a verdict for the plaintiff on the evidence presented." *Id.* at 249, 252, 106 S.Ct. 2505. In this case, the plaintiff has met this burden because a reasonable factfinder could choose to believe the content of the Plaintiff's testimony instead of the Defendant's contrary evidence. Furthermore, the Plaintiff's evidence is unquestionably "material" as the Plaintiff's statements directly contest the factual accuracy of the events surrounding her arrest. Indeed, this evidence will almost certainly effect the outcome of the litigation. *See id.* at 248, 106 S.Ct. 2505. Even though the Defendant vigorously disputes the Plaintiff's version of events with a greater abundance of evidentiary materials, the Plaintiff has satisfied her burden at the summary judgment stage by bringing forth affirmative evidence to create a genuine issue of material fact for trial.